MILLER *v.* YOUMANS-BURKE OIL & GAS CO.

1. CORPORATIONS—CANCELLATION OF STOCK ISSUED INCORPORATORS—
OIL AND GAS LEASES—FRAUD—ESTOPPEL—EQUITY.

Stockholders *held*, not entitled to have corporation reimbursed
or stock issued to incorporators cancelled *pro tanto* for cost of
option on oil and gas lease on 80-acre tract because its value
is claimed to have been purely speculative at time it was
listed in corporate assets nor because incorporators had pro-
cured lease on adjoining 40-acre tract from same source and
after corporation was organized and paying well developed on
larger tract, they sold lease on smaller tract to corporation
and a paying well was developed thereon, in the absence of
evidence of misleading or false representation made by incor-
porators relative to rights in lease on smaller tract and plain-
tiffs are unwilling to renounce their own rights in the corpo-
ration upon reimbursement for investment and expenses.

2. SAME — CANCELLATION OF STOCK ISSUED INCORPORATORS — LAND
CONTRACTS—FRAUD—EQUITY.

Investors in units of defendant corporation's stock, consisting
of a share each of preferred and common stock, who sought
to have cancellation of common stock issued incorporators and
officers in return for the vendee interest of a land contract
because such asset is claimed to have been overvalued and a
liability instead of an asset *held*, not entitled to decree in
court of equity, where whole set-up of corporate assets was
available in records of securities commission, provision was
made for repayment of plaintiff's investment through retire-
ment of preferred stock, investors must have known of highly
speculative nature of venture and evidence as to worth of con-
tract is conflicting.

3. SAME—FRAUD—RELIANCE ON MISREPRESENTATIONS—EVIDENCE.

In suit by investors in stock of corporation the principal assets
of which consisted of an oil and gas lease and the vendee
interest of a land contract, plaintiffs *held*, not entitled to have
stock of corporation, issued in payment for interest in such
contract, cancelled and themselves be thereby indirectly bene-
fited in absence of any proof that any of plaintiffs made their
investments in reliance upon representations that the lots in-
volved were paid for when the fact was otherwise.

4. SAME—SALE OF STOCK—CONSIDERATION—DISCRETION OF DIRECTORS—GOOD FAITH—NEGLIGENCE.

Judgment of the board of directors as to the value of consideration, other than cash, paid for shares of stock is conclusive unless it be shown the directors acted in bad faith or failed to exercise reasonable care in determining such value.

5. SAME—FRAUD—CANCELLATION OF STOCK—EVIDENCE.

In suit by stockholders against incorporators and officers of corporation who had assigned vendee interest in land contract in consideration for shares of common stock to cancel such stock because there was not fair consideration for it and transaction was made in bad faith, evidence *held*, to justify finding of trial court that defendants had done nothing constituting legal fraud against the corporation or its stockholders in such respect.

6. SAME—ACCOUNTING—OIL AND GAS LEASES.

Stockholders *held*, not entitled to complain of action of officers and incorporators in using corporate funds in payment for an oil and gas lease they bought for another corporation where such payment was credited on purchase price of lease they sold to corporation and for which lease they had arranged prior to the incorporation.

7. SAME—ACCOUNTING—INCORPORATION EXPENSES—EVIDENCE.

In stockholders' suit against officers and directors involving an accounting of corporate funds, plaintiffs *held*, not entitled to decree for amount of check paid to an incorporator which he testified represented funds used for incorporation expenses and which testimony is corroborated by other general facts and circumstances.

8. SAME—OFFICERS—ACCOUNTING—INTEREST.

Officer of corporation who draws firm's check to himself is bound to give just account therefor and upon failing to do so is properly chargeable therewith and accrued interest from time money was obtained.

9. SAME—ACCOUNTING—OVERCHARGE FOR SERVICES—SALE OF STOCK.

In stockholders' suit against officers and directors involving an accounting of corporate funds, alleged overcharge by geologist for services rendered *held*, not proven, where such witness testified the difference between cash paid and amount of receipt he signed was payment for stock of defendant corporation.

10. SAME—OFFICERS—ACCOUNTING—PERSONAL OBLIGATIONS.

Seven corporation checks, totalling $281.21, claimed to have been used to pay an officer's personal obligations *held*, chargeable to such officer in stockholders' suit for accounting of corporate funds, where his claim that they were credited by him against commissions due him is not itemized, is too general and lacking in persuasiveness.

11. SAME—RECEIVERS—GOING CONCERN.

Nothing short of a showing of necessity because of some peculiar circumstances will justify the appointment of a receiver for a going, solvent corporation.

12. SAME—RECEIVERS—NEW BOARD OF DIRECTORS—BOOKKEEPING—GOING CONCERN—DIVIDENDS.

Appointment of receiver *held*, properly denied plaintiff stockholders in their suit against officers and incorporators, where, since suit was commenced, a new board of directors has been elected and a bookkeeping system of keeping account of the business and affairs of the corporation inaugurated, corporation is being operated successfully and dividends paid; it being presumed that aggrieved stockholders, in event of future irregularities, will have adequate remedy and redress therefor.

13. APPEAL AND ERROR — LIEN FOR EXPENSES — ENFORCEMENT — STOCKHOLDERS' SUIT AGAINST OFFICERS.

On appeal from decree in suit by stockholders for an accounting by incorporators and officers where lien on defendants' stock is given for amount of expenses incurred by plaintiffs incident to this litigation, but no provision made for its enforcement, decree in Supreme Court is ordered to contain provision for enforcement of such lien.

14. SAME—CROSS-APPEAL—ABANDONMENT.

Cross-appeal is considered abandoned where none of the reasons assigned in support thereof is discussed in cross-appellants' briefs.

15. COSTS—CORPORATIONS—ACCOUNTING.

In suit by stockholders against corporation, its incorporators and officers for cancellation of stock issued latter for certain assets and an accounting as to corporate funds, costs are given plaintiffs against all individual defendants, except one who was neither a director nor an officer, where no proper records of corporate affairs were kept until commencement of suit and defendants who controlled the corporation were grossly careless in conducting its business affairs.

Appeal from Wayne; Callender (Sherman D.), J. Submitted October 9, 1936. (Docket No. 44, Calendar No. 39,126.) Decided January 4, 1937. Rehearing denied March 2, 1937.

Bill by Anna Miller and others against Youmans-Burke Oil & Gas Company, a Michigan corporation, Adonijah J. Youmans, Ernest L. Dalton, Norman R. Wyckoff, James E. Burke and James A. Maguire for an accounting, cancellation of stock, a receivership, money decree and other relief. Samuel J. Lewis and others intervened as parties plaintiff. From decree dismissing bill, plaintiffs and all intervening plaintiffs except Lewis appeal. Defendants Youmans, Dalton and Wyckoff cross-appeal. Reversed and decree ordered entered in accordance with opinion.

*Henry B. Graves* and *Charles H. Hatch,* for plaintiffs and all intervening plaintiffs except Lewis.

*Rich, Munro & Willis* (*Edward A. Rich, Herbert E. Munro* and *Marvin M. Peck,* of counsel), for defendants.

North, J. This suit in chancery was instituted by certain stockholders of the Youmans-Burke Oil & Gas Company, a Michigan corporation, against the organizers and officers of the corporation. Defendant Wyckoff was one of the four incorporators, but he did not become a director or officer. Other stockholders subsequently intervened as plaintiffs. As stated in appellants' brief:

"The bill is filed wholly in the interests of the corporation in behalf of the plaintiffs and all other stockholders who might intervene for the same purpose."

The corporation is also a party defendant, but in this opinion, in speaking of defendants, unless otherwise indicated, we refer only to the individual defendants.  Hereinafter we state more in detail the grounds upon which plaintiffs assert the right of the corporation to a money decree against defendants, and also the right to have a receiver of the corporation appointed.  Plaintiffs have appealed from a decree dismissing the bill of complaint.

Plaintiffs' first contention is that defendants perpetrated a fraud upon the corporation by turning in to the corporation certain assets in consideration of which 30,000 shares of no par common stock of the corporation were issued to defendants, it being plaintiffs' claim that the property or property rights transferred by defendants to the corporation were at most of only speculative value and possibly liabilities instead of assets.

The authorized capital stock of the corporation consisted of 30,000 shares of preferred stock of the par value of $1 each, and 60,000 shares of common stock of no par value.  We quote in part the articles of incorporation:

"The purpose or purposes of this corporation are as follows: Buy, sell, and lease land, drill, operate, and maintain oil and gas wells, construct pipe lines and refineries, and do all things in connection with the production of oil and gas. * * *

"All dividends paid by said corporation up to $30,000 shall be paid to the holders of said preferred stock and upon payment of dividends in the amount of $30,000 the said preferred stock shall be retired. * * *

"The 60,000 shares of no par common stock of this corporation shall be voting stock, and shall participate in all dividends after the preferred stock has been retired."

The corporation was authorized by the securities commission to sell stock in units of one share each of common and of preferred stock at $1. Plaintiffs are the holders of stock so issued. The 30,000 shares of no par common stock were issued to defendants in consideration of the defendants' causing to be assigned to the corporation two items of property.

Item No. 1. This was an option on the so-called Chaffee No. 1 oil and gas lease covering 80 acres of land in Isabella county. Later there was compliance with the extended terms of the option and a paying well was developed. Dividends have been paid and the property is of such apparent value that plaintiffs' attorneys declined to accept defendants' offer to pay plaintiffs the amount they have invested, plus "expenses," for their holdings. This option for the lease was listed in the corporate assets at its actual cost to defendants of $1,200. Appellants' argument, now advanced, that the value of this option was "purely speculative" is not a persuasive reason for cancellation of the stock held by defendants or for rendering a money decree against them. But plaintiffs complain that the corporation was defrauded in that the defendants have made a secret profit. This claim on the part of plaintiffs arises from the following facts: Mrs. Russell, from whom the Chaffee No. 1 option lease was obtained by defendants Youmans and Burke, agreed with these men that in event they successfully carried out the terms of the Chaffee lease No. 1 by developing the property, a so-called LaFevre lease would be turned over by Mrs. Russell to Youmans and Burke. This understanding was entered into prior to the inception of the corporate organization. It is defendants' claim that it had nothing to do with the subsequent incorporation of the Youmans-Burke Oil & Gas Company,

or with the sale of stock therein; but instead was a matter wholly between Mrs. Russell on the one hand and Youmans and Burke on the other. Subsequently this LaFevre lease, through the action of defendants, who were in control of the affairs of the Youmans-Burke Oil & Gas Company, was assigned to and taken over by the Youmans-Burke Oil & Gas Company at a cost of $3,000. This lease covered a 40-acre parcel adjacent to the land covered by the Chaffee No. 1 lease. A paying well was also developed on the LaFevre leasehold and by reason of the transaction just above noted it constitutes a part of the assets of the company in which plaintiffs are stockholders. The contentions of the respective parties presented an issue of fact as to which the trial court found in favor of the defendants. Our review of this record discloses nothing which would justify disturbing such determination. The testimony does not reveal any misleading or false representation made by defendants to plaintiffs touching the rights in the LaFevre lease. Plaintiffs are not disposed to renounce their rights therein but instead are before the court asserting a right to have their corporation reimbursed for its investment in the LaFevre lease, or that the stock of defendants be canceled *pro tanto*. Under the record plaintiffs are not entitled to have such relief decreed.

Item No. 2. This item, assigned to the corporation, was the vendee's interest in an executory land contract for the purchase of 122 lots in Marquette Meadow Subdivision No. 1, located partly in the city of Detroit and partly in the township of Redford, Wayne county, Michigan. The contract for the purchase of these lots by defendant Wyckoff was credited with the payment of $925, and the unpaid portion of the purchase price was $15,000 payable in

monthly instalments. At the time the vendee's interest in this contract was assigned to the corporation (June 18, 1934) the monthly payments were in arrears and there were delinquent taxes aggregating $4,135.74. By the terms of the assignment the corporation assumed and agreed to perform the vendee's contractual obligation. Appellants assert that the actual value of the lots is only $12,200 and that as the result of this transaction the corporation took on a liability instead of receiving a consideration for the 30,000 shares of common stock issued to defendants. Here again the record presents a conflict of testimony as to the value of the vendee's interest in this land contract. In the showing before the securities commission the land was valued at $67,500, and after deducting the unpaid balance of the contract price in the amount of $15,000 and for unpaid taxes $3,000, the "net worth" of the contract was listed at $49,500. Even if, as appellants assert, it might reasonably be found there was an overvaluation of the vendee's interest in this land contract, still we do not think it follows that plaintiffs in a court of equity are entitled to a decree. The whole set-up of corporate assets was an open book in the records of the securities commission before plaintiffs invested in this company's stock. No one can doubt that the investors in this company knew that they were purchasing stock in a highly speculative venture. The plan was that plaintiffs' total investment should be repaid to them as holders of preferred stock before defendants or any other person who held common stock only, should participate in the profits of the corporation. The speculative aspect of the venture had to do not only with the corporation's oil and gas operations, but also with its undertaking to carry out the terms of the

land contract in which it became the assignee of the vendee's interest.

Some of plaintiffs testified that defendant Youmans represented that the lots were paid for, but evidently the trial judge was not much impressed by this testimony, nor are we. At least it was not proven that any of plaintiffs made their investment in reliance upon such representation. Without such proof plaintiffs could not have obtained relief in a suit for fraud brought by them for their own direct benefit against defendants; and we think likewise without such proof plaintiffs should not, in this equity case, be permitted to recover indirectly by a suit allegedly brought for the benefit of the corporation. But recovery herein is not sought on the theory that plaintiffs were defrauded incident to the purchase of their stock. Instead plaintiffs are asserting defendants defrauded the corporation by taking 30,000 shares of no par common stock without turning into the corporation assets which constituted fair consideration and that this was done in bad faith.

"Where shares are issued for any consideration other than cash, the judgment of the board of directors as to the value thereof shall be conclusive unless it shall be shown that the directors acted in bad faith or failed to exercise reasonable care in determining such value." Wilgus & Hamilton, Michigan General Corporation Law (1st Ed.), § 21.

Whatever later statements Youmans may have made as to the lots having been paid for is of little, if any, persuasive force on the issue of "bad faith" in the face of the fact that plaintiffs through their attorneys have refused to surrender their stock in consideration of full repayment of their investment in the corporation. Subsequent developments quite

conclusively refute bad faith on the part of defendants in taking 30,000 shares of the corporation's no par common stock. The later development of the oil and gas interests transferred to the corporation discloses that defendants in fact gave to the corporation adequate consideration for the stock they received. The interest taken in the lots was merely an additional and collateral undertaking with a possibility of saving investors from total loss in case the oil and gas venture failed. One of plaintiffs testified as follows:

"He (Youmans) was putting that subdivision in as collateral for our oil stock, 'as a protection,' he said, 'in case every well was a dry well,' I realize that could happen to us, so we would have to wait five years for the return of our money (from the sale of the lots) and for every dollar we put in, we would receive two out of the subdivision."

Another of plaintiffs on direct examination testified:

"He (Youmans) said, 'This oil stock was guaranteed by real estate and in case if the well was brought in as a dry hole, it would take five years before we could get our money back, and it would pay two for one.' * * *

"Q. What, if anything, did he say about the value of this real estate?

"A. Well, I just can't remember about the value of it, but he said it was appraised at $67,000. * * *

"Q. What, if anything, did he say about any incumbrance on the land?

"A. None whatever.

"Q. Did he tell you anything about the quantity of delinquent taxes against it?

"A. No, sir. We thought everything was taken care of.

"*Q.* After you talked you bought some more stock?

"*A.* Well, I did because the well came in—

"*Q.* I say, after that you bought some more stock?

"*A.* Yes, sir, I bought it on the strength of the well coming in."

The circuit judge recited in his final decree that he did not find defendants had done anything that "constituted legal fraud against the corporation or its stockholders." As applied to the phase of the case just above considered, this was a finding against plaintiffs' contention. On the record we would not be justified in reversing this holding of the trial judge.

Other items as to which plaintiffs assert the defendants, or some of them, misappropriated the corporation's funds, for which a money decree is sought, may be briefly listed as follows: (a) Fraudulent payment of $1,000 as a first payment on the so-called Terry oil and gas lease; (b) an $875 corporation check given by Youmans to Wyckoff; (c) a $2,350 corporation check drawn by Youmans to himself and cashed by him; (d) a claimed overcharge of $128 by Youmans in settling the account of Frederick Grimshaw, a geologist, against the corporation; (e) seven corporation checks totaling $281.21, claimed to have been used by Youmans to pay his personal obligations.

Youmans and some or all of the other defendants were simultaneously interested in promoting other corporations engaged in gas and oil developments. Some of them had individual interests and there was the Youmans-Dalton Oil & Gas Company, also the Youmans-Wyckoff Oil & Gas Company. Undisputed testimony shows that at times money belonging to

the Youmans-Burke Oil & Gas Company was used in paying obligations of the other enterprises, and likewise money belonging to or at least on deposit in the name of defendant Wyckoff was advanced to and used for the benefit of the Youmans-Burke Oil & Gas Company. Nothing like proper records were kept of such transactions. The defendants were in charge of the affairs of the Youmans-Burke Oil & Gas Company, and their failure to keep proper records merits severest condemnation. In his final decree the circuit judge finds the individual defendants were the organizers and controlling officers of the Youmans-Burke Oil & Gas Company from its organization until sometime after suit was started "and as such conducted its business affairs in a grossly careless and negligent manner, but not to the extent that it constituted legal fraud against the corporation or its stockholders."

This suit was started January 8, 1935. Prior thereto Touche, Niven & Company, licensed public accountants, had audited the affairs of the defendant corporation and prepared a balance sheet as of November 15, 1934, and books of account for the corporation based thereon were opened. The audit and balance sheet disclosed expenditures of corporate funds in excess of the amounts received for the sale of stock, which was the sole source of prior income.

Item (a). Adverting particularly to item (a) above, if, as we think the record shows, the defendants were justified in charging the corporation $3,000 for the LaFevre lease, there is no ground of complaint because of $1,000 of corporate money having been used in paying for the Terry lease. The corporate money so used was credited as a payment on the $3,000 that the corporation paid for the La-Fevre lease.

Item (b). Defendant James E. Burke, the secretary-treasurer of the Youmans-Burke Oil & Gas Company, was in ill health at the time the corporation was in the process of developing its properties. At the time the case was heard Burke was a patient in a tuberculosis hospital and so ill that he was not able to be present as a witness. Defendants claim that because of Burke's condition and for convenience, the corporation's financial transactions were largely carried on through a bank account in the name of defendant Wyckoff. Checks were issued either by or through the authority of defendant Youmans. Undisputed testimony shows that Wyckoff, one of the largest stockholders, advanced substantial sums of money with which to meet the corporation's obligations. He permitted free use of money on deposit in his personal bank account. In turn, as payment, corporation moneys were deposited in Wyckoff's account. For months no books of account were kept by the corporation of such transactions. Youmans testified that he made a record at the time "on a yellow working sheet that I keep in my office." He could not find this sheet at the time of the trial. We quote his testimony in part:

"I had a working sheet on which the first I carried down was the name of the stock buyer, the amount of money that he had paid in, and then carried a long list of columns, and then the columns when they paid additional money, that when the stock certificate was issued and the number of stock certificate, the sales, person who sold them, and the amount of 15 per cent. commission and the amount that would have to be accounted for on the 85 per cent. for the corporation. * * *

"Q. Your conception of the bookkeeping requirements was, that you knew you were going to sell so

much stock that you could always arrive at the total so many shares, does it not?

"*A.* Yes.

"*Q.* At any time the corporation needed an accounting, all you had to do was to take 85 per cent. of that and that was the money that belonged to the corporation?

"*A.* Yes. * * * I admit it is good business to keep those (books of account), but under the circumstances I was working, our secretary-treasurer being ill and not around the office, I just had to make out the best way I could."

By use of checks, check stubs, bank books and other sources of information the accounting firm of Touche, Niven & Company was able to audit the corporation's affairs, prepare a balance sheet, and furnish the set-up for books of account, as above noted. Touching this audit, Mr. Waugh, manager of the accounting company, testified:

"*Q.* Then, shall we * * * ask you whether or not you found as a result of your investigation or audit that all funds thus deposited in accounts of others and belonging to the Youmans-Burke Oil & Gas Company were, in fact, checked out in behalf of the corporation?

"*A.* Oh, yes.

"*Q.* You found that absolutely to be the fact?

"*A.* Yes, sir."

Aside from this general audit and the matter of subsequent ratification by action of the corporation's directors, the record as to specific items for which plaintiffs assert the corporation should have a money decree, is indefinite and not as decisive as might be desired. We shall not attempt to detail herein all the record. As to this item (b), a corporation check for $875 given by Youmans to Wyckoff, we quote briefly from Wyckoff's testimony:

"*Q.* This $875 loan, was that made in one—

"*A.* I believe I testified to that.

"*Q.* —you did not say whether it was made at one time. You said it was part of many loans that you made.

"*A.* It might have been part of the same loans given back.

"*Q.* You cannot recollect whether it was all one time or not?

"*A.* I cannot say.

"*Q.* You do not recollect ever having struck a balance or settled the account with the corporation?

"*A.* My opinion is that the corporation owes me no money."

On cross-examination defendant Youmans testified:

"*Q.* I show you exhibit 55, check by Youmans-Burke Oil & Gas Company for $875 to Mr. Wyckoff and by him indorsed. Why was that check drawn?

"*A.* Well, I know in the very beginning that Mr. Wyckoff advanced some money and that money I had in his account—we had advanced some money for pre-organization, incorporation expense to Lansing, and so forth—now, unless those are moneys that had gone into the Youmans-Burke account, and at that time was deposited in Mr. Wyckoff's account to cover those organization expenses—secretary of the State, securities commission, appraisals, stock certificates and so forth—I don't know what all that would be, but that would be the only explanation I could make of it. * * *

"*Q.* This is a check drawn by you paid to Mr. Wyckoff for $875? You cannot explain any more than what you have already explained?

"*A.* That is the best explanation I can make; that is the best to my memory and knowledge."

While the above and other testimony concerning this item is of a general character and none too satis-

factory, still it is corroborated by the other general facts and circumstances disclosed by the record. It satisfied the trial judge that plaintiffs were not entitled to have a decree for this item, and on this record we will not disturb such holding.

Item (c). This is the corporation check for $2,350, dated May 23, 1934, drawn by defendant Youmans, payable to himself, and indorsed and cashed by him. The bill of complaint specifically charges this item to Youmans. His answer contains only an indefinite and wholly unsatisfactory explanation. His brief presents no reasonable defense, and his own testimony in effect is summed up in this briefly quoted extract from his cross-examination:

"*Q.* You cannot tell us what became of that $2,350?

"*A.* I don't recall it.

"*Q.* You noticed that check in the account?

"*A.* Yes, sir.

"*Q.* You got that money May 23d?

"*A.* Yes, sir.

"*Q.* You cannot tell anything about what you did with it?

"*A.* I don't recall."

Youmans admits drawing the check to himself by means of which he obtained the above sum of money belonging to the corporation of which he was an officer. He was bound to give a just accounting therefor, or be charged therewith. Having wholly failed in anything like a just accounting, he is properly chargeable with the item and with accrued interest from May 23, 1934.

Item (d). This involves a receipt for $495 taken from Mr. Frederick Grimshaw, a geologist, purporting to be for payment in that amount for services rendered to the defendant corporation by Grimshaw. In fact he was paid in cash by Youmans only $367.

The discrepancy of $128 is explained by Grimshaw's testimony on cross-examination that he also received from Youmans 250 shares of common and preferred stock in the defendant corporation. We think this explanation of plaintiffs' own witness must be accepted and the item of alleged overcharge of $128 held not to have been proven.

Item (e). This remaining item pertains to a group of seven corporation checks totalling $281.21. Plaintiffs claim these checks were used to pay Youmans' personal obligations, not those of the corporation. In his original answer Youmans states these checks were drawn "for the defendant corporation purposes and growing out of the lawful, legal and regular operation of said company business." In a supplemental answer he sets up that these checks were used by him and credited as part payment of commissions due him from the defendant corporation. On cross-examination Youmans admitted that at least some of the items paid by these checks were his personal obligations. His claim that the checks were credited by him against commission due him, is not itemized, and is so general and so lacking in persuasiveness that we think defendant Youmans should be charged with the consequence of his own carelessness and neglect by being required to account for this item of $281.21, with interest thereon.

The bill of complaint also contains in its prayer for relief the following:

"That if it shall appear necessary in order to preserve the moneys and other property of the corporation, a receiver be appointed by this honorable court therefor with adequate powers so to do."

Appointment of a receiver was denied by the circuit judge and we think properly so. As bearing upon the necessity or propriety of appointing a re-

ceiver the following facts are pertinent. It is noted in the decree entered in the circuit court that after the case was submitted to that court "in pursuance to suggestions of counsel for various parties and suggestions of the court, the stockholders have elected a new board of directors." The original board, consisting of three members, has been increased to seven. As hereinbefore noted, following the audit of the corporation's affairs, a bookkeeping system of keeping account of the business and affairs of the corporation was inaugurated. The corporation is being operated successfully and during the calendar year next following the filing of the bill of complaint two 4 per cent. dividends were paid. Nothing short of a showing of necessity because of some peculiar circumstances will justify the appointment of a receiver for a going, solvent corporation. *Central Holding Co.* v. *Bushman,* 238 Mich. 261; *Morehead Manfg. Co.* v. *Washtenaw Circuit Judge,* 254 Mich. 697. No such showing is made in the instant case. It is to be presumed that plaintiffs, or any other aggrieved stockholder, in event of future irregularities, will have adequate remedy and redress therefor.

Appellants seek modification of the provisions in the decree touching the reimbursement of plaintiffs for expenses incurred incident to this litigation. It is pointed out that although the trial judge gave plaintiffs a lien on defendants' stock for the expenses decreed, no provision is made for the enforcement of such lien. Provision may be made in the decree to be entered in this court for enforcing the lien decreed to plaintiffs on defendants' stock, but otherwise the provisions of the decree entered in the circuit court as to reimbursing plaintiffs for expenses will not be modified, it being our opinion that

the same is suitable to the circumstances of this case.

Further discussion of questions suggested by counsel is not necessary to decision herein. Defendants perfected a cross-appeal, but the reasons assigned in support of this cross-appeal are not discussed in any of the briefs. The cross-appeal is considered abandoned.

The decree entered in the circuit court dismissing plaintiffs' bill of complaint will be reversed and a decree entered in this court in accordance herewith. Plaintiffs will have costs of both courts to be taxed against the individual defendants, excepting Norman R. Wyckoff, who was neither a director nor an officer.

FEAD, C. J., and WIEST, BUTZEL, BUSHNELL and SHARPE, JJ., concurred. TOY, J., took no part in this decision. POTTER, J., did not sit.