VERTEX INVESTMENT CO., A CORPORATION, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103675.    Promulgated July 2, 1942.

*Philip S. Ehrlich, Esq., Julien R. Bauer, Esq.,* and *Robert S. Buchanan, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

**OPINION.**

KERN : As stated above, the main issue is whether 80 percent of petitioner's gross income in 1937 was personal holding company income as that term is defined in section 353 (a) of the Revenue Act of 1937. The facts disclose that over a period of years the deceased ex-president and ex-treasurer of petitioner had commingled the funds of petitioner with his own by depositing them together in his individual bank account and had used for his own purposes the sum of $140,124.01 from petitioner's funds without any corporate authority and without the knowledge of petitioner's other stockholders. After his death in 1935 the unauthorized use of petitioner's funds was discovered and petitioner filed a claim against the officer's estate. The other stockholders of petitioner were brothers and sisters of the deceased. Upon his death one of the brothers was elected president of petitioner. This brother was also one of the coexecutors of decedent's estate. As a result of conferences between this brother, the other coexecutor (the deceased's widow), and an attorney who was acting for the estate and was considered by the new president of petitioner to be also acting for petitioner, a settlement was finally reached which proved at that time to be agreeable to all parties involved, and gained the necessary approval from the Superior Court of California. This was in 1937, at which time the principal liability of the estate to petitioner had been reduced to $134,479.78 by virtue of a cash payment of $5,644.23 from decedent's bank account. The settlement called for the transfer of certain securities and surrender of dividends, the aggregate value of which was set by the parties at $173,650, an amount $39,170.22 in excess of the principal liability. By agreement, however, $320.65 was refunded to the estate. The parties in their settlement agreement and in their application to the Superior Court designated the amounts to be received by petitioner in excess of $134,479.78 as interest, and that court sanctioned the settlement as proposed.

Petitioner now claims that none of this amount was, in fact, "interest" as that term is used in the revenue acts, but was return of

lost capital or damages for loss of capital. Petitioner therefore contends that this amount did not constitute taxable income and, accordingly, asks a refund of that part of its Federal income taxes paid for the taxable year on account of the receipt of this item.

In support of this contention the petitioner advances two arguments. The first is to the effect that its settlement with the estate of Louis Schwabacher was for a sum far less than that to which it was entitled, in that it could have recovered, in an action for an accounting, the profits made by Louis by the use of petitioner's funds. The short answer to this contention is that we are concerned with what petitioner did rather than with what it could have done. Petitioner brought no action for accounting and nothing in the record indicates that petitioner even contemplated the possibility of such an action during the taxable year and prior to the settlement above outlined. It filed a claim against Louis' estate predicated upon advances made by petitioner to Louis as shown by its books and in the principal amount shown therein as an indebtedness. In addition to this amount petitioner claimed certain amounts as interest and was paid certain amounts as interest. No reference was made to profits made by Louis as the result of his use of the unauthorized advances. Even if a claim has been made for such profits and a settlement payment had been made therefor, the amounts so paid would have constituted taxable income to petitioner and not a return of lost capital. *Arcadia Refining Co.* v. *Commissioner*, 118 Fed. (2d) 1010.

The second argument advanced by petitioner in support of its contention that the amounts received by it as interest did not constitute taxable income is to the effect that such amounts, in reality constituted damages and must be considered as damages for loss of capital. The argument that these amounts must be considered as damages and not as interest is also relied upon by petitioner in its contention that the amounts in question did not constitute personal holding company income within the meaning of section 353 (a) of the Revenue Act of 1937,[1] and therefore 80 per centum of its gross income for the taxable year was not personal holding company income and petitioner is not subject to the personal holding company surtax imposed by section 351 of that act.

Broadly stated, petitioner's contention is that amounts to which a taxpayer is entitled as damages can be considered neither as "income" nor as "interest" within the meaning of the revenue acts. That "damages" may in certain circumstances constitute taxable income is well established. *Liebes & Co.* v. *Commissioner*, 90 Fed. (2d) 932;

---

[1] SEC. 353. PERSONAL HOLDING COMPANY INCOME.

For the purposes of this title the term "personal holding company income" means the portion of the gross income which consists of:

(a) Dividends, interest, royalties (other than mineral, oil, or gas royalties), annuities.

*Charles S. Davis, Trustee*, 35 B. T. A. 1001. That "damages" may constitute "interest" is also a conclusion warranted by the authorities, if the so-called damages represented a payment imposed by law for the use or detention of money. In *Joseph W. Bettendorf*, 3 B. T. A. 378, 383, we said: "Interest is the compensation allowed by law, or fixed by the parties, for the use or forbearance of money, or as damages for its detention", citing 33 Corpus Juris 178. And in the more recent case of *Elverson Corporation*, 40 B. T. A. 615, 644, in defining "interest, as generally understood" we used, among others, the same definition. See, also, 33 Corpus Juris 182. If the amounts received by petitioner in the instant proceeding in excess of the principal amount claimed are to be considered as damages for the detention of money, they will come under the definitions given above and will constitute interest. In so far as they may be considered damages for the detention of money, the receipts in question differ materially from awards of damages *qua* damages rendered in legal actions arising from the conversion, either voluntary or involuntary, of property. See *Seaside Improvement Co.* v. *Commissioner*, 105 Fed. (2d) 990; *N. V. Koninklijke Hollandische Lloyd*, 34 B. T. A. 830; *Francois Lang*, 45 B. T. A. 256. But cf. *Commissioner* v. *Kieselbach*, 127 Fed. (2d) 359. Since the amounts here involved, if considered as such damages, come within our definition of "interest", and since there are no cases involving similar facts which require a holding to the contrary, we question the validity of petitioner's contention that amounts to which petitioner might be entitled as damages can not be "interest" within the meaning of section 353 (a), *supra*.

However, as we view the facts shown here by the record, and particularly the acts of petitioner itself, it is not necessary to consider the question of whether damages in the ordinary sense can be considered as interest. In all cases of conversion, the tort may be waived and the wrongdoer may be sued in contract. 1 C. J. 1033; *Bechtel* v. *Chase*, 156 Cal. 707; 106 Pac. 81. Even in the case of embezzlement "the embezzler incurs an equivalent debt as surely as if he had borrowed with the consent of the owner", the law fixing upon him "the duty to account for and to repay the value of what is taken." *McKnight* v. *Commissioner*, 127 Fed. (2d) 572. See, also, concurring opinion of Magruder, J., in *Boston Consolidated Gas Co.* v. *Commissioner*, 128 Fed. (2d) 473. Where an officer of a corporation appropriates or uses its money for his own purposes he is chargeable with interest thereon. 19 C. J. S. 132, citing *Miller* v. *Youmans-Burke Oil & Gas Co.*, 278 Mich. 647; 270 N. W. 819. An unauthorized loan or advance to an officer may be ratified by the corporation by unanimous action of its stockholders, and after such ratification it will be considered a debt. *Ledger Co.* v. *United States*, 37 Fed. (2d) 775. See Fletcher on Corporations, vol. 4, § 2507.

Our analysis of the facts indicates that the deceased was the president and treasurer of petitioner corporation, the other stockholders of which were his brothers and sisters, who left the conduct of its affairs in his hands. As in other corporations having a small and intimate group of stockholders, the business and corporate records of petitioner were on an informal basis. The deceased over a long period of time had made a practice of causing the corporation to make advances to him, which he recorded in the corporate books of account as a debt owing by him to the corporation. While there were no efforts on his part as disclosed by the records to keep these advances secret, they appear to have been unknown to the other stockholders and were unauthorized at the time when they were made. The fact that he kept the funds of petitioner in his own account should have been known to the other stockholders, since they were paid dividends from time to time by checks drawn on his personal account. Upon the death of the deceased the other stockholders learned of the unauthorized advances made to and by their dead brother. They, at that time, and as the remaining stockholders and directors of petitioner, were faced with the problem of how petitioner should treat these unauthorized advances. Motivated by feelings of family sentiment and solidarity, they took the course which was calculated to cause no family scandal. Instead of advancing a claim which was based upon tort and would impute the crime of embezzlement to their dead brother, it was decided to advance a claim predicated upon book advances which were to be treated as a debt which the deceased brother owed to the corporation. In the claim filed against the deceased's estate petitioner included a claim for interest on the account "from the respective dates of the advances." The claim of petitioner was allowed and paid in the total principal amount claimed, plus interest on this total principal amount at 5 percent from August 1931 to and including the date of payment.

Petitioner thereby waived any tort on the part of the deceased, ratified the advances, and proceeded on the theory of contract. In all of its actions it treated the account as a valid indebtedness and treated as interest the excess of payments received over principal amount claimed. We see no reason to treat it differently.

The $38,849.57 was interest within the scope of section 353 (a) of the Revenue Act of 1937 and, inasmuch as petitioner admits that more than 50 percent in value of its stock was owned during 1937 by not more than 5 individuals, we conclude that petitioner should have filed a personal holding company return, and we sustain respondent's determination of deficiency.

The sole remaining issue is in regard to the 25 percent delinquency penalty asserted by respondent. Petitioner makes no argument on this point, nor do the facts reveal any mitigating circumstances in

its favor. We therefore sustain respondent on this point. See *Seaboard Loan & Savings Association, Inc.,* 45 B. T. A. 510.

*Decision will be entered under Rule 50.*