MOSSMAN, YARNELLE & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3269, 11076. Promulgated November 11, 1927.

46

*Frank H. Bryan*, Esq., *W. J. Vesey*, Esq., and *J. M. Chenoweth*, Esq., for the petitioner.

*C. H. Curl*, Esq., for the respondent.

## OPINION.

STERNHAGEN : The petitioner claims that for 1918 it has the right to the deduction of $36,000 set forth in the corporate resolution of June, 1919, for additional salaries to officers. The amounts were not fixed in 1918, were not carried in the accounts at any time as a liability, were not, so far as the evidence shows, communicated to any of the employees, and have never been paid. The only evidence of their existence on the corporate records is that contained in the minutes of the meeting of June, 1919. The oral testimony of the officers goes only to the extent of saying that the matter of increased salaries had been discussed at various times, and does not disclose any action definite enough to represent a liability. In 1918 the only evidence is that such an informal discussion occurred, and in our opinion this falls short of establishing a deductible expense paid or incurred in that year. While it is true, as petitioner contends and this Board has repeatedly recognized, that corporate action may be informal and yet binding, the evidence here does not establish any effective corporate action whatever in 1918. The respondent's determination as to this item is sustained.

For 1918 and 1919, the respondent erroneously reduced invested capital by subtracting from earnings available for dividends tentatively estimated tax amounting in 1918 to $32,361.76, and in 1919 to $66,804.94. This was contrary to *L. S. Ayers & Co.*, 1 B. T. A. 1135, and numerous later decisions, and the respondent is reversed.

The petitioner next argues that at the time of its organization in February, 1908, it acquired in exchange for its capital stock of a par value of $100,000 not only the cash and tangible assets of the business theretofore conducted by the partnership, aggregating $489,356.34, but also a substantial additional value representing the good will or other intangible assets of the business. This intangible value is claimed by the petitioner to amount to $200,000,

The Revenue Act of 1918, section 326, in setting forth the factors which may be included in invested capital, includes the cash and the full value of tangible property paid in for stock up to the par value of the stock issued therefor. There is a proviso, however, that the excess of the value of the property actually paid in if clearly shown may be included as paid-in surplus. Invested capital may further include the actual cash value of intangible property *bona fide* paid in for stock or shares not exceeding the lowest of (a) the value of the property, (b) the par value of the stock, (c) 25 per cent of the par value of the stock outstanding on March 3, 1917. In *St. Louis Screw Co.*, 2 B. T. A. 649, followed in *Tyler & Hippach, Inc.*, 6 B. T. A. 636, the Board held that where a mixed aggregate of tangible and intangible property was paid in to a corporation in exchange for its capital stock, and the aggregate value of the property exceeded the par value of the stock issued therefor, a proportionate allocation might properly be made by which a portion of the par value of the stock was to be regarded as issued for tangibles and a portion for intangibles, and the excess of the value of tangibles over the par value of the stock proportionately issued therefor might properly be included within invested capital as paid-in surplus, although as to intangible property such paid-in surplus was clearly prohibited by the statute. See *Herald-Despatch Co.*, 4 B. T. A. 1096. Thus it will be seen that if the petitioner is able to prove a value of intangibles paid in for stock or shares, its invested capital is increased by an amount equivalent to the portion of par value of stock attributable to intangible property.

There is no question that the value of the business paid in for stock or shares included cash and tangible property aggregating $489,-356.34, and that the par value of the total stock issued for the business as a whole was $100,000. Thus far the Commissioner has included the full amount within invested capital. The taxpayer contends that this should be increased by the alleged intangible value. This requires the determination by this Board of two questions—(1) whether in fact at the time of the corporate organization there was any intangible property in the business, and (2) if so, the determination of its value.

There are no well known and uniformly accepted rules either for the determination of the existence of good will or for its valuation, and it is only by looking at the circumstances of the business as a whole in the light of its history up to the time of the transfer date under consideration that the question can be decided. The evidence discloses that the business conducted by the partnership was successful from the time of its inauguration in 1898 until its incorporation in 1908; that its reputation was well and favorably established; that its investment out of earnings increased from year to year; and that

its earnings showed a steadily upward trend except for the year 1904, when there was a slight decline. The statement of two witnesses, both substantially interested in the present proceeding, were that in their opinion the good will was worth $175,000 or $200,000. Their method, however, of reasoning to this opinion gave little, if any, indication of its basis. While the problem of valuation is not to be confined to the application of mathematical formulae or governed by a slavish adherence to a rule, nevertheless it may not as a matter of law be disposed of by the categorical opinions of witnesses unless their training and experience and their intelligent appreciation of the nature of the valuation problem give substance to their opinions. With such evidence as there is in this record in respect of the history of this business, we have reached the conclusion that the good will of the business was on February 5, 1908, worth $100,000.

For a mixed aggregate of tangible and intangible property, having a combined actual cash value of $589,356.34, there was issued $100,000 par value of capital stock; and by applying the rule laid down in *Appeal of St. Louis Screw Co.*, *supra*, it is found that intangible property, of a value of $100,000, was paid in to petitioner for $16,967.66 par value of capital stock. Since the par value of the capital stock issued for the intangible property is the lowest of the three limitations prescribed by the statute, this is the amount to be included in invested capital; and invested capital shown in the deficiency notice should be increased by $16,967.66. Proper adjustment should be made under section 326 (c) in respect of inadmissible assets.

Pursuing further the subject of intangible value, the question is raised as to such value on March 1, 1913, as a factor in the computation of gain or loss on the disposition of the business in 1919 to the newly created Mossman-Yarnelle corporation. The facts indicate that the good will had substantially increased in the five years between the creation of the corporation in 1908 and 1913. The capital and the earnings steadily grew. In view of all the evidence, we are of opinion that the fair market value of the good will and other intangible property of the petitioner on March 1, 1913, was $150,000. Since, however, this is higher than the cost in 1908 as heretofore found, it may not be considered in computing any loss which may have been sustained in its disposition in 1919. *Ludington* v. *McCaughn*, 268 U. S. 106; 5 Am. Fed. Tax Rep. 5376; *United States* v. *Flannery*, 268 U. S. 98; 5 Am. Fed. Tax Rep. 5373. The basis of determining such loss is the lower figure as between cost and value on March 1, 1913, which in this instance is $100,000.

For 1919 the parties are in dispute in respect of the measure of the loss ultimately sustained as the result of the two transactions in October, one whereby the petitioner exchanged its business, good will,

cash, stock in trade, contracts, and filing systems, for stock of the new corporation having an aggregate par value of $396,000, and shortly thereafter sold the said stock for $251,700. The precise situation is greatly confused by several counteracting book entries which were made to reflect it, and it is apparently as the result of this confusion that the Commissioner's determination is likewise not clearly set forth. It is only by a diligent search of the records and a careful analysis that the true situation in respect of its tax significance is disclosed. Throughout the period of its history until the transfer to its successor corporation, the petitioner carried no entry upon its books showing as an asset any of the items of good will, leasehold value, contracts, or filing systems. Whatever it owned of such items was not, therefore, represented, so far as the accounts show, by either cost or 1913 value. The book value of the merchandise account and that of furniture and fixtures were the only two items transferred which were shown on the books. The merchandise account was shown at $245,000, and this item is not disputed by the Commissioner as representing the cost basis to be used for this item in the transaction. This leaves only the remaining four items. As to these, since the cost or March 1, 1913, value was taken as zero, clearly there can be no charge of excessive valuation, and taking the entire stock as having in fact a fair value of $251,700 as represented by the almost concurrent sale thereof, it is readily seen that the loss on the entire transaction can be no less than the $44,877.48 claimed by the petitioner. We have, however, heretofore found that the good will had in fact cost $100,000, and this should therefore be substituted for the zero used by the petitioner on its books as the basis for the inclusion of that item in the group conveyed. Thus the loss becomes $144,877.48 instead of the $44,877.48 taken by the petitioner.

Respondent, in the deficiency notice, has confused the entries in the furniture and fixtures account; and of the total book loss from the sale of the properties and of the stock received therefor he has disallowed the sum of $5,577.48, as the loss alleged to have been claimed by petitioner on the disposition of the furniture and fixtures. His action is premised on the grounds that the furniture and fixtures were entered on the books at a depreciated cost of $4,422.52, and that petitioner, in computing the net loss on the exchange of the properties for stock, assigned to the furniture and fixtures a cost of $10,000. At the time of the transfer, the furniture and fixtures were carried on petitioner's books at a depreciated cost of $5,577.48, and at the same time, of the total par value of the stock received for all the properties, $10,000 was credited to furniture and fixtures account, reflecting a book profit of $4,422.52. This profit, together with the book profits in the other property accounts, all of which resulted from treating the stock received in exchange for the properties as worth par, and

which amounted in the aggregate to $99,422.52, was offset against the loss of $144,300 from the sale of the stock received for the properties, showing a net book loss from the two transactions of $44,877.48, which is the amount which petitioner claimed as a loss in the return. Comparing the actual facts with those assumed by respondent, his confusion is disclosed. The total loss should not have been reduced by $5,577.48, and as to this, respondent is in error.

We have found, therefore, that as a result of the entire conversion in 1919 of these assets into cash through the acquisition of the stock and its cash sale, there was a loss amounting to $144,877.48, and this amount should be used in the computation of the petitioner's net income for that year. The result is a matter of computation, and since it does not produce a net loss it will not affect petitioner's taxable net income for 1918.

The evidence does not establish any error of the respondent in respect of the inclusion in income of the amount of $50,000 allocated to the lease, and since the point is not pressed by petitioner the respondent is sustained.

In computing the deficiency in accordance herewith proper adjustment should be made for the correct taxes in computing the invested capital.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*