OPINION. Kekn, Judge: The first and major issue presented for decision herein is whether the petitioner realized long-term capital gain or ordinary income upon the sale of his men’s haberdashery business. The respondent based the determination of the deficiency with respect to this issue upon four alternative theories, namely, that the amount of the payment to petitioner in excess of the value of the tangible assets of the store was either: (a) To induce petitioner to enter into a contract; (b) advance compensation for services to be rendered; (c) rent; (d) short-term capital gain on the sale of goodwill. In his brief, respondent also argues that since the lease covering the store location was not assigned by petitioner, there was no transfer of goodwill and hence no “sale or exchange” within the meaning of section 117 of the Internal Revenue Code of 1939. Upon this issue petitioner contends that he sold his business as a going concern, including its “locational goodwill,” over 6 months after the business was started and, therefore, any proceeds received by him in excess of his basis constituted capital gains. Specifically he contends that the value of the stock received by him constituted capital gains since it was received “in payment for the locational goodwill of his business * * It will be noted that the agreement of sale dated April 7, 1947, while calling for the sale of “the assets of the business known as de Free’s” in the first paragraph, calls for payment in the same paragraph in terms indicating -that the payment was only for inventory, that the second paragraph of the agreement called for the payment by the purchasers of the liabilities of de Free’s in an amount not to exceed $12,500 and for the assumption of the lease, and that the stock of the acquiring corporations was to be given to petitioner “for the goodwill of de Free’s.” No payment was spelled out for the furniture, fixtures, improvements, and prepaid items. It will also be noted that the provisions of the contract with regard to payments were not complied with. Instead of petitioner receiving the payment called for by paragraph 1 of the agreement and the acquiring corporations paying the liabilities of de Free’s, petitioner received over $22,500, part of which ($12,500) he allocated to “furniture, fixtures and leasehold improvements.” Part of petitioner’s furniture and fixtures was acquired by petitioner when he acquired the store in September 1946, but part was acquired later at times not disclosed by the record. Similarly, a part of the “leasehold improvements” was made prior to October 7,1946, and a part was made later. Therefore, even if petitioner acted correctly in treating the $Í2,500 as payment for “furniture, fixtures and leasehold.improvements” (a treatment not supported by the agreement of April 7,1947), we would still be unable to determine what part of the $12,500 constituted long-term capital gains. For the purposes of the discussion of this issue, we will assume that all payments of moneys or stock received by petitioner, except those received for the merchandise inventory, were received for what petitioner describes as “locational goodwill.” We will also assume, contrary to respondent’s contention, that there was a “sale” by petitioner of this “locational goodwill” on April 7, 1947. Even on these assumptions, petitioner cannot prevail. The burden of proving that the respondent’s determination was erroneous was upon the petitioner. In our opinion, he has failed to sustain this burden since he has failed to establish that the proceeds of the sale in excess of the amount paid for the merchandise inventory represented long-term capital gain upon the sale of goodwill held for more than 6 months. In view of this conclusion, it is unnecessary to consider the other alternative theories presented by the respondent on this issue. In D. K. MacDonald, 3 T. C. 720, 726, we quoted the following definition of the term “goodwill” from the Cyclopedic Law Dictionary (3 ed.), and noted that it had also been quoted with approval by the Supreme Court of the United States: The benefit whieh arises from the establishment of particular trades or occupations. The advantage or benefit which is acquired by an establishment, beyond the mere value of the capital, stocks, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputdtion for skill or affluence or punctuality, or from other accidental circumstances or necessities or even from ancient partialities or prejudices. Story, Partn. § 99. * * * It includes only that estimation and repute which is peculiar to the particular establishment. It is that species of connection in trade which induces customers to deal with a particular firm. In an early case we pointed out that “one of the chief factors in the development and growth of goodwill is long continued business under the same or similar names and in the same community.” Theo. Planz, Inc., 10 B. T. A. 1158, 1159. Other factors to be considered include the record of earnings, stability of customers, the nature of the premises occupied by the business, the operating costs, the economy of the region served, the competition, the competence and efficiency of the management, and the existence of unusual economic conditions. Estate of Henry A. Maddock, 16 T. C. 324, 329; Estate of A. Bluestein, 15 T. C. 770. We do not question that goodwill may be attached to a particular location, see Morris Gumpel, Executor, 2 B. T. A. 1127, but, in our opinion, all of the factors which must be considered in determining whether or not goodwill exists involve an element of time. Essentially, the goodwill of a business is the potential of that business to realize earnings in excess of the amount which might be considered a normal return from the investment in the tangible assets. Only the passage of time can establish the criteria whereby the existence and value of such potential can be determined, and we have been reluctant to attempt to value goodwill where the determining factors may have been in existence for only a short period. See Independent Aetna Sprinkler Co., 15 B. T. A. 21; R. H. Perry & Co., 12 B. T. A. 328. Under unusual circumstances, a value has been determined for goodwill after a relatively short period of operation. In Sidney V. LeVine, 24 T. C. 147, we found that a partnership owned goodwill of substantial value despite a mere 28 months of operation, but therein we also found that the partnership had assembled and trained a group of highly skilled employees accustomed to working together, had developed specially designed equipment for the particular work done by the partnership, had established a distinct pattern of growth, and, from its very inception, had shown substantial and constantly increasing profits far beyond what might be expected as a normal return on the investment in tangible assets. In the instant case we have the problem of determining whethei goodwill existed as an asset of the petitioner’s business prior to October 7, 1946, so that such a capital asset would have been held for more than 6 months at the time of its sale on April 7, 1947. Sec. 117 (a). As we have previously noted, the foregoing authorities make it clear that goodwill is not an asset which normally is acquired in a relatively short period of time. Despite excellent location, unique design, lack of competition, and other favorable factors, a newly established retail store may well require a period of several months before the public is accustomed to patronizing it in numbers sufficient to enable the store to do a business of such substantial volume as to indicate that it is capable of future earnings in excess of the normal return that might be expected on the investment therein. Until such time, it cannot be said that the business possesses goodwill as an asset. On the record before us, it appears that the petitioner commenced doing business in the Madison Avenue store toward the end of September 1946. The store at this time was undergoing alterations and such business as petitioner carried on was not even recorded in his books, the receipts therefrom being used to meet the incidental expenses of setting up the store. Levitt first visited the store and was impressed by the volume of business being conducted in February of 1947, but this was only about 2 months prior to the sale. By that time petitioner’s business may well have developed goodwill of appreciable value, but we are unable to find on the evidence before us that such goodwill existed as an asset of the business for more than 6 months prior to April 7,1947. Fair Market Value of Stock Received. The second issue for decision is the fair market value of the stock of the four Levitt corporations received by petitioner as part of the consideration for the sale of his business. This stock constituted 20 per cent of that issued and outstanding, and petitioner reported the value as $32,751.74, which his accountant testified was computed by taking 20 per cent of the net worth ($163,758.71) of the corporations as shown on the combined balance sheet of April 5, 1947. Respondent determined a value for the stock of $44,827.60 in his notice of deficiency and argues that it must be confirmed because petitioner failed to introduce any affirmative evidence demonstrating its incorrectness. However, the assets of a corporation may be considered in valuing its stock, and, “in the absence of any different showing, the book value of those assets is some evidence of their actual value sufficient to shift the burden of going forward to the respondent.” B. F. Edwards, 39 B. T. A. 735, 737-738; see also Ralph Perkins, 41 B. T. A. 1225, affd. (C. A. 6, 1942) 125 F. 2d 150; Earl V. Perry, 22 T. C. 968. In the absence of any evidence by respondent, we sustain the petitioner’s valuation. Loss on Merchandise Inventory. The respondent argues that the price fixed in the agreement of April 7, 1947, for petitioner’s merchandise inventory was not bona fide and should be disregarded. He points to the discount of $3,000 provided by the agreement regardless of the size of the inventory as evidence of an arbitrary arrangement without relation to actual inventory values. As we view the facts, Levitt, toward the end of the negotiations for the purchase of petitioner’s business, suddenly demanded a discount in the flat amount of $3,000 to cover an anticipated loss in liquidating a stock of shirts not carried by the Custom Shops. We need not decide whether his demand was legitimate or was a bit of last-minute haggling for a lower purchase price to which petitioner succumbed. We are satisfied that petitioner sold his merchandise inventory for $3,000 less than its cost basis and is entitled to an ordinary loss thereon. Cf. Williams v. McGowan, (C. A. 2, 1945) 152 F. 2d 570. Rent Reimbursement. The respondent decreased the petitioner’s receipts from the sale of his business by the amount of $583.34, which he determined was reimbursement to petitioner for rent for the period April 7,1947, to April 30, 1947, rather than a part of the sales price, and consequently disallowed an equal amount of rent expense claimed as a deduction by petitioner in his return. Petitioner has not shown that respondent erred in this adjustment and we sustain the respondent on this issue. Gain on Sale of Furniture and Fixtures and Leasehold Improvements. The petitioner reported the excess of the proceeds allocated to his furniture and fixtures and leasehold improvements above the basis therefor as long-term capital gain without allocating the proceeds as between these several assets. The respondent treated the entire amount received in excess of the basis of these and other assets as ordinary income. Although petitioner pleaded as an error the respondent’s elimination of the long-term capital gains and the treatment of the transaction as giving rise to ordinary income, he has not adduced sufficient evidence to enable u£ to make a finding as to the amount of the proceeds properly allocable to the furniture and fixtures and to the leasehold improvements or to determine what part of such fur-nature, fixtures, and leasehold improvements was owned by Mm prior to October 7, 1946. On the record before us, we can only sustain the respondent’s determination on this point. Decision will ~be entered under Bule 50.