---

Mr. Rourke J. Sheehan, Washington, D. C., for petitioner.

Mr. Robert E. McCally, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Charles T. Duncan, Corporation Counsel, Hubert B. Pair, Principal Asst. Corporation Counsel, and Henry E. Wixon, Asst. Corporation Counsel, were on the brief, for respondent.

Before DANAHER, TAMM and ROBINSON, Circuit Judges.

**ACF INDUSTRIES, INCORPORATED,**
Petitioner,

v.

**DISTRICT OF COLUMBIA, Respondent.**
No. 20742.

United States Court of Appeals
District of Columbia Circuit.

Argued June 15, 1967.

Decided June 29, 1967.

DANAHER, Circuit Judge:

The District of Columbia Tax Court on November 23, 1966 entered its decision vacating and setting aside its earlier decision in favor of the taxpayer and determined that a franchise tax for the fiscal year ended April 30, 1960 in the amount of $8,986.25, with interest, had been validly assessed against and collected from ACF Industries, Incorporated. The taxpayer has here contended that in light of the findings and the opinion of the Tax Court it has become clear that the Tax Court had erroneously interpreted, after hearing on remand, the guidelines set forth in the opinion of this court in District of Columbia v. ACF Industries, Incorporated, 122 U.S.App. D.C. 12, 350 F.2d 795 (1965).

In the Tax Court's opinion we read:

"This Court would be less than frank if it did not say that it is not certain what it should do, or what is meant by the observation that the respondent changed its position 'after the petition had been filed'. It is assumed that the Court of Appeals had reference to the answer of the respondent wherein it prayed for an increase of the tax to $15,000, based upon the determination that the entire $300,-000, instead of $179,725 was taxable income. At any rate, the respondent

---

7. Scott v. Scott, *supra* note 1, 220 A.2d at 96.

has not supplied any evidence that would justify or support either the original assessment or the claimed additional assessment. The question here presented is whether in the light of the opinion of the United States Court of Appeals this Court should cancel the original assessment because of lack of proof justifying it. There is no question as to this Court's duty to deny the increase, since that was an affirmative demand not supported by any evidence."

The facts as stated in our earlier opinion, *supra,* had been stipulated. We there approved the use of such stipulations in tax cases but pointed out that when a stipulation is not complete, evidence must be adduced on unstipulated issues of material facts. Following remand it was further stipulated in the Tax Court that the evidence adduced at the original hearing was to be considered without reintroduction, and the original findings of the Tax Court were made a part of its findings on remand.

Additionally the Tax Court found that the purchaser of the taxpayer's assets, Allis-Chalmers Manufacturing Company, had determined the taxpayer's net worth to be $1,616,501 based upon the taxpayer's balance sheet. Not included therein by specific reference were such valuations as might have been attributable to certain items, such as uncompleted contracts and subcontracts, insurance policies, performance bonds, lease of offices, patents and inventions and books and records. Not specifically evaluated in the balance sheet, the Tax Court noted, was what the buyer was "anxious to acquire," a going business "with the personnel following:

"Vice-President and general manager, manager of administration, assistant manager, manager of research and development, manager of engineering, legal counsel, seventy engineers, ten physicists, seven field engineers and inspectors, five purchasing agents, one person on contracts, two telephone operators, one librarian, twenty-two draftsmen and designers, six technical writers and illustrators and forty-four clerical employees."

In our earlier opinion we had said:

"When the business has operated for an appreciable length of time prior to the two-year period before the sale, it can ordinarily be assumed that good will existed for the required capital asset holding period. In some cases this assumption may not be borne out by the evidence. For example, the good will may have been purchased from another business at some time within the two-year period, or it may have been created by an intensive campaign specifically designed to produce good will. In such cases, the holding period can clearly be said to commence at the time of the purchase or creation. But absent some significant event, such as those mentioned, which would fix the acquisition of good will at some time after the commencement of the business, it should be assumed that it came into being at the time the business established itself as a going concern." [1]

We had there enumerated factors usually considered as elements of good will which can be transferred and observed that they have been recognized as assets which might account for the difference between the actual purchase price and the sum of the individual market values of the more tangible assets. [2]

Our earlier opinion had noted that the total purchase price had never been disclosed and that there had been no indication of what might be the book value of the assets involved.

At the hearing following remand, the book value of the taxpayer's current assets and fixed assets was established. The purchase price was shown to be $1,916,501. The Tax Court observed that Allis-Chalmers "was impressed favorably with the ability of the personnel of the

1. 122 U.S.App.D.C. at 16–17, 350 F.2d at 799–800.

2. *Id.*

Organization," and "were anxious to acquire it." In extension of its conclusion, the Tax Court stated:

> "The Court is of the opinion that the Organization had good will, not only because it was a going concern, but also because, due to the novel and peculiar nature of its business, [and] the fact that it had substantial contracts for the construction of atomic reactors at home and abroad, it had the potential to attract highly skilled atomic engineers who were in great demand. The Court is of the opinion, based upon the evidence, that good will was present more than two years before the sale; and has found that its value was at least $300,000. The record does not disclose what additional value, if any, there was of that asset."

Our review of the entire record has convinced us that the Tax Court erred only in its ultimate conclusion. The observation that the court "is not certain what it should do" would seem to indicate the point at which error crept into its opinion. What this court wanted was proof, indeed the earlier record was so inadequate that we were not in position to sustain the contentions of either party. The deficiencies in the earlier record to which we have referred were here supplied in the particulars mentioned, and it clearly appears that the good will, with ample foundation in the record, had a valuation of at least $300,000. In point of further fact, it would not be difficult to conclude that the good will asset was what the purchaser really sought to acquire. Trained, skilled specialists in the nuclear reactor field, working as a team in a going business, may be difficult to come by.

Since the findings clearly establish that the good will was a capital asset held for more than two years, the gain from the sale was exempt from taxation.[3]

The decision of the Tax Court is reversed, and the case is remanded with directions that decision be entered for the taxpayer to recover as erroneously assessed, the franchise tax for the fiscal year ended April 30, 1960 in the amount of $8,986.25, plus interest.

So ordered.

---

3. D.C.Code §§ 47–1557a(b) (11) and 47–1551c(*l*) (1961).