ESTATE OF HERMAN LAFF, DECEASED, JUNE T. LAFF, EXECUTRIX, AND JUNE T. LAFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Laff v. Commissioner
Docket No. 2698-74.
United States Tax Court
T.C. Memo 1979-523; 1979 Tax Ct. Memo LEXIS 6; 39 T.C.M. (CCH) 813; T.C.M. (RIA) 79523; December 31, 1979, Filed Walter G. Schwartz, for the petitioners. Eugene H. Ciranni, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes for the years 1964 through 1966: Year
Deficiency
1964
$1,340.94
1965
1,341.48
1966
1,504.69
The sole issue for our determination is whether the gain from the sale of petitioners' business in 1963, received by petitioners in the taxable years at issue, constitutes long-term capital gain or ordinary income. This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference. At the time of filing their petition, Herman Laff (now deceased) and June T. Laff *7 resided at San Mateo, California. June T. Laff was appointed executrix of her husband's last will and testament by the Superior Court of the State of California for the County of San Mateo, California. Petitioners timely filed joint Federal income tax returns for the years 1964 through 1966 with the District Director of Internal Revenue at San Francisco, California. From 1958 until 1963, Herman operated Jay Hampton Tailors (hereinafter Tailors), a sole proprietorship engaged in the suit-selling business. Tailors operated as a "suit club" in which suits and topcoats, manufactured by a Los Angeles company, were sold in weekly installments through the use of coupon books. Outside salesmen would solicit a customer to come into one of Tailors' three sales offices (in Oakland, San Jose, or San Francisco) where he would be measured, sign a contract, and receive a coupon or payment book. After the customer paid at least $20 in weekly payments of $2, he would be fitted for a suit which would then be ordered from Los Angeles. When the customer received his suit, he would often still owe money under the contract (generally $15 to $30). Tailors' accounting records were maintained *8 on an accrual basis. As a payment was received on a suit contract, the cash account would be debited and "customers' deposits," a deferred-income account, would be credited. After the customer picked up his suit, the deferred-income account would be debited and the sales account, credited. Any unpaid balance remaining on the contract would then be charged to an accounts receivable account. Tailors' salesmen received their commissions when Herman verified and accepted the contracts. The sales commission expense, however, would be charged as a deferred expense ("deferred commissions") and would not be claimed as a business expense until the customer actually picked up his suit. On July 26, 1963, petitioners sold Tailors. According to the balance sheet on the date of the sale, the following assets were sold and liability assumed: Assets
Basis
Accounts receivable $ 5,273.88
Inventories
12,489.11
Furniture and Fixtures
$1,657.20
Accumulated
Depreciation (330.00)
1,327.20
Deferred commissions
65,000.00
Goodwill (purchased)
13,842.03
97,932.22
Liabilities
Customers' deposits
164,184.16
The contract for sale made no allocation of the purchase *9 price to the items sold. According to the contract, specifically excluded from the sale were cash and investments which petitioners retained. Specifically included were accounts receivable, inventory, work in progress, furniture and fixtures, goodwill, business name and customers' lists. The total gain realized by petitioners was $137,572.52 calculated, and stipulated by both parties, as follows: Total sales price: Note:
$ 71,600.00
Assumption of
Liabilities
164,184.16
$235,784.16
Less: Basis in assets
transferred
97,932.22
Selling expense
279.42
(98,211.64)
Total gain realized
$137,572.52
The buyer gave petitioners a promissory note in the face amount of $71,600 as partial payment for the sale. Additionally, he assumed the obligations on petitioners' deferred-income account as of the date of sale. Under the promissory note, petitioners were to receive $4,000 immediately plus weekly payments of $200 for 338 consecutive weeks or until Herman died, whichever occurred first. After the buyer acquired Tailors, 60 percent of the customers whose contracts he had purchased actually completed payments under their contracts.Of those who did *10 complete payments, 7 percent returned as repeat customers. In 1963, petitioners received $8,400 with respect to the note. That amount together with $164,184.16, the assumption of the deferred-income liability account, was treated by respondent as being received in 1963. [1] Because of the contingent nature of the note payments, the parties agree that the gain from the sale of the business should be reported under the "recovery of basis" method. In each of the years 1964 through 1966, petitioners received 52 weekly payments or a total of $10,400. Since petitioners fully recovered their basis in 1963, all of the $200-per-week payments they received in the years at issue constitute gain to them. *11 Petitioners contend that the payments on the promissory note received by them in the taxable years 1964 through 1966 are taxable as long-term capital gain since the income represented by the "customers deposits" account could have been taxed in earlier years and since the payments were not the result of the assumption by the buyer of liabilities under the deferred income account (which, they assert, occurred in 1963) nor of advanced payments which were also taxed as ordinary income in 1963. Respondent argues that the gain from the sale of petitioners' business is attributable to the sale of only one item, the "customers' deposits" deferred-income account, which item, he maintains, is an ordinary income item. Alternatively, respondent contends that since petitioners disposed of an ordinary income item which they receive but, because of their accounting method, had not reported as income, they must recognize ordinary income on the sale of that item. Pridemark, Inc. v. Commissioner, 42 T.C. 510 (1964), affd. as to this point 345 F.2d 35 (4th Cir. 1965); Jud Plumbing & Heating, Inc v. Commissioner, 153 F.2d 681 (5th Cir. 1946). Respondent *12 asserts, finally, that none of the gain petitioners realized on the sale of their business is attributable to the sale of goodwill. We agree with respondent. Respondent's determination of a deficiency is presumptively correct. Petitioners have the burden of proving such determination is wrong. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
The sale of a going business by a sole proprietor is the sale of all the assets of that business, rather than the sale of a single entity.The selling price must, therefore, be allocated among the individual assets with the character of the gain with respect to an asset determined by the character of that asset. Williams v. McGowan, 152 F.2d 570 (2d Cir. 1945); Bialock v. Commissioner, 35 T.C. 649 (1961). The burden for making the allocation is on the taxpayer. Where he has failed to prove the capital nature of items sold, the gain will be taxed as ordinary *13 income. Friedlaender v. Commissioner, 26 T.C. 1005 (1956); Newton v. Commissioner, 12 T.C. 204 (1949). The taxpayer also has the burden of proving what portion of the selling price is attributable to the sale of goodwill. Wilmot Fleming Engineering Co. v. Commissioner, 65 T.C. 847 (1976); Newton v. Commissioner, supra.
Petitioners have failed to show both what portion of the selling price is allocable to each item sold and the capital nature of these items. Several assets sold are specifically excepted from the definition of capital asset in section 1221: [2] accounts receivable (section 1221(4)), inventories (section 1221(1)), furniture and fixtures subject to depreciation (section 1221(2)). In their brief, they seem to have accepted respondent's allocation that all of the gain from the sale of Tailors was from the sale of "customers' deposits," a liability account. *14 They argue, however, that this income might have been taxed in earlier years and thus gain from the sale of this account can only be capital gain. There is no merit to this argument. Petitioners cite Schlude v. Commissioner, 372 U.S. 128 (1963); American Automobile Assn. v. United States, 367 U.S. 687 (1961); S. Garber, Inc. v. Commissioner, 51 T.C. 733 (1969); Farrara v. Commissioner, 44 T.C. 189 (1965), in support of their contention. These cases merely indicate that if the Commissioner had challenged Tailors' method of accounting, petitioners would have had to report income when received even though Tailors was on the accrual basis.The Commissioner, however, has not objected to petitioners' accounting method. In their reply brief, petitioners assert that since the buyer assumed the liability account in 1963 and since petitioners were also taxed on advance payments in 1963, the payments received by them in the taxable years in issue cannot be the result of either. This argument is also without merit. The payments petitioners received in 1964 through 1966 stemmed from the sale of their business in 1963. *15 That they received payments from this sale in later years does not fragmentize the sale itself. The sale of the "customers' deposits" account allowed petitioners to keep the cash represented by this bookkeeping entry and transferred to the buyer the obligation to deliver the suit to the customer as well as the right to receive any balance due under the customer's contract to purchase a suit. This account was integral to the everyday operation of Tailors and represented a right to future income. Since the term "capital asset" is to be narrowly construed and applied where there has been an "appreciation in value accrued over a substantial period of time," Commissioner v. Gillette Motor Co., 364 U.S. 130, 134 (1960), it is an inappropriate characterization of "customers' deposits." Rather, respondent's classification of this item, which could have given rise to future income or loss, as an ordinary income item is more appropriate. See Commissioner v. P. G. Lake, Inc., 356 U.S. 260 (1958); Corn Products Refining Co. v. Commissioner, 350 U.S. 46 (1955). *16 In their reply brief, moreover, petitioners claim that at least some of the gain from the sale of Tailors is attributable to goodwill. They argue that the sales agreement included the sale of "goodwill, business name and customers' lists," that the balance sheet of the business immeidately before the sale contains "goodwill (purchased)," that Tailors was able to collect deposits of $164,184.16, and that the buyer paid more than book value for the business. There is little evidence in the record to support petitioners' contention. The goodwill referred to on the balance sheet relates to goodwill purchased sometime in the past. Any additional goodwill included in the sale at issue has not been shown. Decisions will be entered for the respondent. Footnotes
1. respondent issued a notice of deficiency to petitioners for 1963, asserting that petitioners had failed to report ordinary income in the amount of $74,372.52 resulting in an alleged deficiency of $23,776.88. Petitioners paid the asserted deficiency but after a denial of their claim for a refund, filed a refund suit in the United States District Court for the Northern District of California (No. C-70-2558 LHB). Our research indicates that case did not go to judgment on its merits.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise stated.↩