John H. VERKOUTEREN, Petitioner,

v.

DISTRICT OF COLUMBIA, Respondent.

Herman OSHINSKY, Petitioner,

v.

DISTRICT OF COLUMBIA, Respondent.

Charles OSHINSKY, Petitioner,

v.

DISTRICT OF COLUMBIA, Respondent.

William OSHINSKY, Petitioner,

v.

DISTRICT OF COLUMBIA, Respondent.

Herman FENICHEL, Petitioner,

v.

DISTRICT OF COLUMBIA, Respondent.

Bernard MARGOLIUS et al., Petitioners,

v.

DISTRICT OF COLUMBIA, Respondent.

Nos. 18530–18535.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 25, 1965.

Decided May 11, 1965.

Mr. Albert E. Arent, with whom Mr. Joel N. Simon, Washington, D. C., was on the brief, for petitioners.

Mr. Henry E. Wixon, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Donald T. Fish, Asst. Corp. Counsel at the time the brief was filed, were on the brief, for respondent.

Before FAHY, WASHINGTON and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

Appellants in these several cases organized in 1948 a corporation known as Capitol Hotel Enterprises, Inc. That company purchased in 1948 all of the stock of Chastleton Hotel, Inc. for $20,480. On January 29, 1960, Capitol Hotel Enterprises, Inc., was dissolved and the Chastleton stock distributed in liquidation to appellants. The closing balance sheet of Capitol showed an earned surplus of about $100,000, with the Chastleton stock still carried at its cost. On February 1, 1960, each appellant sold the Chastleton stock received by him for a consideration which aggregated $390,000 for all such stock.

In the course of its examination of appellants' District of Columbia income tax returns for 1960, the District taxing authorities adjusted the tax liability of each by adding to taxable income (1) a dividend from Capitol in the amount of his proportionate share of Capitol's closing earned surplus, and (2) a capital gain on the sale of the Chastleton stock computed by reference to the original cost of such stock to Capitol. Deficiencies on this basis were assessed and paid, and petitions for review filed in the Tax Court. The cases were considered by the Tax Court on a record consisting of a stipulation of facts entered into by the parties, and upon briefs and oral arguments. The stipulation referred to the dividend representing the earned surplus, and this issue was eliminated from the case by appellants' express acquiescence in the adjustment made with respect to it. The stipulation also recited the dissolution of Capitol, and the receipt by appellants in liquidation of the Chastleton stock. In referring to the subsequent sale of that stock, the stipulation stated that: "On February 1, 1960, each of the * * * [appellants] sold the shares of Preferred Stock and Common Stock received by him upon the dissolution of Capitol for the amount set forth below."

On the facts as so stipulated the District pressed before the Tax Court its claim that each appellant was liable for a capital gain on the sale of his Chastleton stock, measured by the difference between what he received upon his sale of stock and his *pro rata* share of its original cost to Capitol. Appellants argued alternatively that they were either entitled to a new, stepped-up basis, or that, if they were to be assigned the old basis of Capitol, their holding period for the Chastleton stock was to be measured from the date of its acquisition by Capitol. At no time, including the oral argument before the Tax Court, was there a reference by anyone to any other theory for sustaining the deficiency assessments.

Such a theory first emerged in the Tax Court's opinion. It said that it did not need to resolve the issues presented to it by the parties, inasmuch as the taxing authorities were wrong in assuming that the appellant-stockholders, as distinct from Capitol, had sold the Chastleton stock. Since only three days had elapsed between the distribution of the Chastleton stock in liquidation and its sale, the Tax Court said that Capitol must, in fact if not in form, be taken to have negotiated and made the sale prior to dissolution. Thus, the $390,000, minus the book cost of $20,480, is to be regarded as part of the earned surplus of Capitol upon dissolution, and, thus, includible in appellants' incomes as dividends.[1] Since

1. Berliner v. District of Columbia, 103 U.S.App.D.C. 351, 258 F.2d 651, cert. denied, 357 U.S. 937, 78 S.Ct. 1384, 2 L.Ed.2d 1551 (1958); and see District of

deficiencies assessed on this basis would be the same as those on the capital gains approach advanced by the District, the petitions were denied.

■ This disposition, in our view, cannot stand. The issue on which the Tax Court rested its decision was not before it and, so long as the stipulation has vitality, cannot be before it. The claim of increased tax liability on that ground was never made at any time by the District taxing authorities, and, indeed, they stipulated facts which foreclosed it completely. In the face of that stipulation, the Tax Court could not make contrary findings of fact.[2] As the Supreme Court has made crystal clear, this particular issue turns peculiarly upon how the facts are found in the particular case, and the taxable consequences vary from case to case in accordance with such findings. Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945); United States v. Cumberland Pub. Serv. Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950). Where the point is raised in a timely fashion and the parties are afforded an opportunity to litigate the question by the submission of evidence and argument as to the

inferences properly to be drawn from such evidence, we have recognized that the findings of the Tax Court are to be accorded great weight, as would be true of any trier of comparable issues. Bord v. District of Columbia, 120 U.S.App. D.C. ——, 344 F.2d 560 (decided March 4, 1965). But if the Tax Court is to be treated as at least a quasi-judicial tribunal and not as a super-assessing authority, it cannot proceed as it has here. The so-called Court Holding Co. issue simply was not in these cases, and the Tax Court could not, under the circumstances here obtaining, import it by main strength.

■ The District and the appellant-petitioners did present to the Tax Court a serious and substantial issue arising out of the capital gains provisions of the District law. We are urged to decide that issue ourselves, without remand. But the Tax Court is an expert and specialized agency for the resolution of controversies between the District of Columbia and its taxpayers. Congress created it for the purpose of causing that expertise to be brought to bear in the first instance. We remand these cases in order that that be done.

It is so ordered.

---

Columbia v. Oppenheimer, 112 U.S.App. D.C. 239, 301 F.2d 563 (1962).

2. Rule 21(b) of the Tax Court's own Rules of Procedure is as follows:

(1) *Stipulations required.*—The Court expects the parties to stipulate evidence to the fullest extent to which complete or qualified agreement can be reached including all material facts that are not or fairly should not be in dispute.

This very rule seems to us to reflect the importance and significance which courts customarily attach to stipulations of fact. Their binding effect has long been recognized. See 9 WIGMORE, EVIDENCE § 2588 (3d ed. 1940); Burstein v. United

States, 232 F.2d 19 (8th Cir. 1956); United States v. Kahriger, 210 F.2d 565 (3d Cir. 1954); Norwich Pharmacal Co. v. Rakway, Inc., 189 F.Supp. 348 (E.D. Pa.1960).

The District argues to us now that whether the appellants or Capitol made the sale of Chastleton stock is an ultimate fact which the Tax Court may find in the manner it did from the recitals contained in the stipulation. This argument is largely couched, however, in terms of the extensive power vested in the Tax Court to make virtually unassailable findings on disputed evidence. It is beside the mark where the parties have contrarily stipulated the critical fact, as we think they have clearly done here.