**DISTRICT OF COLUMBIA, Appellant,**

v.

**The NATIONAL BANK OF WASHINGTON, Appellee.**

No. 79–651.

District of Columbia Court of Appeals.

Argued Dec. 9, 1980.

Decided May 12, 1981.

As Amended June 15, 1981.

Richard G. Amato, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Richard W. Barton and James E. Lemert, Deputy Corp. Counsel, and Richard L. Aguglia, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellant. Robert E. McCally, Deputy Corp. Counsel, and Henry E. Wixon, Asst. Corp. Counsel, Washington, D.C., also entered appearances for appellant.

Jeffrey S. Holik, Washington, D.C., argued for appellee; Philip J. Mause and Lawrence A. Levey, Washington, D.C., were on the brief for appellee. John Lewis Smith, III, Washington, D.C., also entered an appearance for appellee.

Before KERN, HARRIS and PRYOR, Associate Judges.

HARRIS, Associate Judge:

This appeal is an aftermath of the extensive pension fund litigation commenced over a decade ago as *Blankenship v. Boyle*.[1] We resolve whether a portion of a payment made by appellee, The National Bank of Washington (NBW), in settlement of that action is deductible as "interest to . . . depositors" under the District of Columbia's gross earnings tax on certain financial institutions.[2] Finding error in the trial court's determination that NBW's settlement payment did constitute deductible interest, we reverse and reinstate the District's denial of the bank's refund claim.

I

Until ordered by the district court in *Blankenship* to place its deposits elsewhere,[3] the United Mine Workers of America Welfare and Retirement Fund of 1950 ("Fund") was NBW's largest customer.[4] From the creation of the Fund in 1950 through the entry of orders in *Blankenship* in 1971, the Fund maintained substantial amounts of cash in non-interest bearing demand deposits, or checking accounts, with the bank. Representative figures stipulated by the parties reflect that the cash balance of these accounts never dipped below $14 million; in one year they reached $75 million.

Alleging that failure of the Fund's trustees to invest excess cash which was maintained in NBW checking accounts constituted a breach of trust, beneficiaries of the Fund commenced *Blankenship* as a derivative action on behalf of the Fund.[5] NBW and one of its former presidents were named as defendants, together with the United Mine Workers, the Fund, and certain of its trustees.[6] Although NBW had not acted as a trustee of, or as an advisor to, the Fund, the district court found that the bank conspired with the trustees to prevent the investment of accumulated excess cash, to NBW's benefit and to the Fund's detriment.[7]

In awarding $11.5 million against all defendants as damages for the Fund's loss of income, the district court assumed that "the excessive funds would all have been invested only in tax-free municipals [municipal bonds]" by prudent trustees.[8] At no juncture did the district court relate its damages award to the rate of interest offered by NBW on any of its forms of deposit.[9]

While appeals from the district court's orders were pending, all parties to *Blankenship* agreed to settle the action for the $11.5 million figure which had been set by the district court, plus interest from the date of judgment. NBW paid the Fund $6,669,685 on December 27, 1973, in full settlement of its apportioned liability, consisting of $5,750,000 in the form of damages together with $919,685 as interest.

1. 329 F.Supp. 1089 (D.D.C.1971), and 337 F.Supp. 296 (D.D.C.1972), aff'd mem., 167 U.S. App.D.C. 209, 511 F.2d 447 (1975). We refer to the opinions respectively as *Blankenship (I)* and *Blankship (II)*.

2. D.C.Code 1976 Supp., § 47–1703, provides in pertinent part:
   Incorporated savings banks paying interest to their depositors shall . . . make report under oath to the board of personal-tax appraisers on or before the 1st day of August in each year as to the amount of their gross earnings, less the amount paid as interest to their depositors for the preceding year ending June 30th, and shall pay thereon . . . six per centum per annum.
   For the tax year at issue here, the statute was the same, but for the ·fact that the applicable tax rate was four percent. *See* D.C.Code 1973, § 47–1703.

3. *Blankenship (I), supra*, 329 F.Supp. at 1113.

4. The United Mine Workers' union during that time period was NBW's majority stockholder. *Id.*, at 1099.

5. *Id.*, at 1092, 1095, 1099.

6. *Id.*, at 1092.

7. *Id.*, at 1101.

8. *Blankenship (II), supra*, 337 F.Supp. at 300.

9. On one occasion, however, the district court did examine the bank's payment of interest on certificates of deposit purchased from NBW by the Fund, but only to determine if the rate offered comported with the open market interest rate. Finding NBW's rate "consistent with the market," the district court awarded no damages based on those transactions.

## II

For the fiscal year ending June 30, 1974, NBW paid $584,952.64 in gross earnings taxes assessed under D.C.Code 1973, § 47–1703.[10] By timely claim, NBW sought a refund of $230,000 predicated upon its settlement payment in *Blankenship* during that accounting period.[11] *See* D.C.Code 1973, § 47–2413. The District denied the claim, and NBW subsequently filed a petition for a refund with the Tax Division of the Superior Court.

In essence, NBW contended that any litigation settlement payment to a depositor, if occasioned in part by the bank's interest-free use of the depositor's funds, is comparable to the payment of interest to a depositor. Interest paid to a depositor is the sole statutory deduction from the District's tax on the gross earnings of savings banks. Alternatively, NBW sought to offset its taxable gross earnings in the amount of the settlement by portraying the payment as a restoration to the Fund of previously taxed earnings improperly derived from the bank's tortious use of the Fund's deposits.

Accepting NBW's characterization of the settlement payment as interest, the trial court concluded:

> What the Bank was required to do by way of payment of damages was to pay interest which should have been previously paid to its depositors. That being the case, that "interest" is deductible pursuant to D.C.Code 1973, § 47–1703. This being the case, the petitioner is entitled to a refund.

## III

In considering appeals from the Tax Division of the Superior Court, we adhere to the standard of review applicable to other decisions of that court in civil cases tried without a jury. *See* D.C.Code 1973, § 47–2404(a). Accordingly, we will not disturb factual findings of the trial court unless they are "clearly erroneous," *District of Columbia v. Neyman*, 135 U.S.App.D.C. 193, 196, 417 F.2d 1140, 1143 (1969), or unless the trial court's judgment is "plainly wrong or without evidence to support it." D.C.Code 1973, § 17–305(a); *Ashby v. United States*, D.C.App., 363 A.2d 685, 687 (1976); *$3,265.28 in United States Currency v. District of Columbia*, D.C.App., 249 A.2d 516, 518 (1969).

Thus, ordinarily we defer to the trial court's factual determinations, even where we might have viewed the facts otherwise, if the trial judge resolved substantial and conflicting testimony. *Monarch Construction Corp. v. J. H. Marshall & Associates, Inc.*, D.C.App., 213 A.2d 894, 896 (1965). Moreover, we generally will not upset the ultimate legal conclusion of the trial court when its outcome follows necessarily from findings of fact by which we are bound. *See Hoffheins v. Heslop*, D.C.App., 210 A.2d 841, 843 (1965).

Somewhat greater latitude to scrutinize the trial court's factual findings, however, exists in the situation presented by this appeal. Not only was the trial court itself bound by facts stipulated by the parties, but also, as the parties further agreed, all facts of governing significance previously had been resolved by the district court in *Blankenship*. *See* Super.Ct.Tax.R. 11(b); *Verkouteren v. District of Columbia*, 120 U.S.App.D.C. 361, 363, 346 F.2d 842, 844

---

**10.** The record does not reveal why NBW was taxed under § 47–1703, which is applicable to "savings banks" and "incorporated savings banks," rather than under § 47–1701, applicable to "national banks." The parties so stipulated, however, and the trial court was bound by that factual stipulation absent a showing of good cause to qualify, change, or contradict the agreed-upon facts. Super.Ct.Tax.R. 11(b); *see Verkouteren v. District of Columbia*, 120 U.S. App.D.C. 361, 363, 346 F.2d 842, 844 (1965).

Additionally, by "administrative interpretation," § 47–1703 applies to "commercial banks with substantial savings departments." *Hamilton National Bank v. District of Columbia*, 85 U.S.App.D.C. 109, 113, 176 F.2d 624, 628, *cert. denied*, 338 U.S. 891, 70 S.Ct. 241, 94 L.Ed. 547 (1949). The trial court made no finding regarding the extent of NBW's savings business.

**11.** NBW sought to deduct from its taxable gross earnings only the $5,750,000 "damages" portion of its settlement, and not the $919,685 accrued interest on that sum.

(1965); *accord, Alper v. District of Columbia,* 120 U.S.App.D.C. 364, 346 F.2d 845 (1965). The trial court accordingly had access to precisely the same record facts as those now before us, and it performed no independent factfinding function. We therefore consider ourselves at liberty to reverse the trial court in this idiosyncratic instance in which we conclude that a mistake of factual interpretation has been made.

### IV

As our earlier synopsis reveals, we disagree with the trial court's thesis that the district court in *Blankenship* ordered NBW "to pay interest which should have been previously paid to its depositors." As we see it, the district court found a breach of trust arising from the failure of the trustees to invest the Fund's excess cash in tax-free bonds.[12] That breach did not result from the trustees' default in obtaining interest from the bank, but rather from a conspiracy between NBW and the trustees to leave excess cash uninvested and deposited in non-interest bearing checking accounts.[13] Even had the Fund's trustees acted properly, in the district court's view, they would not have placed the Fund's deposits in interest bearing accounts with NBW.[14]

Our conclusion that the damages in *Blankenship* were not gauged by reference to bank interest in any form renders irrelevant the trial court's premise that payments equivalent to bank interest are deductible from taxable gross earnings as "interest to ... depositors."[15] *See* D.C.Code 1973, § 47–1703. Nonetheless, NBW still would have us view its settlement payment as deductible "interest to ... depositors" by resort to a definition of "interest" as any "compensation ... for the use or forebearance of money, or as damages for its deten-

tion." *Vertex Investment Co. v. Commissioner,* 47 B.T.A. 252, 258 (1952). We regard this general definition as inapposite to the common sense concept of "interest to ... depositors" which is used in § 47–1703, and we decline to adopt it.

The permitted deduction of "the amount paid as interest to ... depositors" appears only in the provision for a gross earnings tax on incorporated savings banks. *Compare* D.C.Code 1973, § 47–1703, *with e. g., id.,* § 47–1701. In that context, the term "interest to ... depositors" has a straightforward meaning, apparently describing a relatively fixed rate of earnings on a passbook or other type of savings account.

▪ A settlement in lieu of damages for breach of trust does not perform a function sufficiently akin to passbook-type interest to qualify for this deduction, especially where the underlying tort was not a failure to achieve the receipt of interest from the bank. To sanction the "interest" deduction here would permit too much to turn on the fact that the Fund's trustees, in not utilizing tax-free investments, placed excess cash in a no-interest bank account rather than in an equally unremunerative strongbox.

As employed in the gross earnings tax statute, the term "interest to ... depositors" has a plain meaning, and the plain meaning of words always is preferred in construing a statute. *United States v. Stokes,* D.C.App., 365 A.2d 615, 618 (1976). Indeed, "in the absence of persuasive evidence to the contrary, we are not empowered to look beyond the plain meaning of a statute's language in construing legislative intent." *Ibid.*

Even were we in doubt as to the meaning of this tax statute, we would endeavor to conform its interpretation to comparable provisions of the federal Internal Revenue Code. *See District of Columbia v. ACF*

---

12. *Blankenship (I), supra,* 329 F.Supp. at 1095, 1099.

13. *Id.,* at 1101, 1104.

14. *Blankenship (II), supra,* 337 F.Supp. at 300.

15. Nothing in the record suggests that the settlement payment should be regarded as conceptually distinct from the damages awarded by the district court. Indeed, the settlement was for the full amount of the court-awarded damages.

*Industries, Inc.*, 122 U.S.App.D.C. 12, 15, 350 F.2d 795, 798 (1965). Under the federal statute permitting some savings banks to deduct from taxable income the "amounts paid . . . as dividends or interest on . . . deposits," we also find no definition of interest. *See* 26 U.S.C. § 591 (1976). The absence of a technical definition of deductible savings bank interest confirms our impression of the term's plain meaning.[16]

In any event, NBW's expansive definition of "interest," which notably would include damages for the retention of money, draws solely upon a case involving an implied contract to pay fixed interest. *Vertex Investment Co. v. Commissioner, supra*, 47 B.T.A. at 258. No such contract with the bank was found to exist by the district court in *Blankenship.* To the contrary, where, as in *Blankenship*, damages recompense a party for the tortious (and not contractual) use of its money, the federal tax laws do not treat those damages as deductible interest. *Bettendorf v. Commissioner*, 3 B.T.A. 378 (1926).

Our distinction between tort and contract claims for the retention of money follows an established tenet of federal tax law, which examines the legal nature or origin of a litigated claim in connection with which a settlement payment or other expense is sought to be deducted. *See Woodward v. Commissioner*, 397 U.S. 572, 578, 90 S.Ct. 1302, 1306, 25 L.Ed.2d 577 (1970); *United States v. Gilmore*, 372 U.S. 39, 49, 83 S.Ct. 623, 629, 9 L.Ed.2d 570 (1963); *Anchor Coupling Co. v. United States*, 427 F.2d 429, 433 (7th Cir. 1970), *cert. denied*, 401 U.S. 908, 91 S.Ct. 866, 27 L.Ed.2d 806 (1971). A review of *Blankenship* substantiates the District's contention that the claim against NBW did not emanate from the bank's failure to pay interest on the Fund's deposits. Accordingly the bank's settlement payment to the Fund did not constitute "interest"

deductible from taxable gross earnings under § 47–1703.

### V

No statutory provision expressly supports NBW's alternative refund argument which, like the interest claim, rests on an erroneous characterization of the liability determined in *Blankenship.* NBW contends that in settling the action it merely restored to the Fund earnings rightfully belonging to the Fund and improperly claimed by the bank in prior years. In NBW's view, equitable "claim of right" notions which evolved under the federal tax laws dictate that previously taxed earnings should be deductible upon their refund to their proper owner. *See North American Oil Consolidated v. Burnet*, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197 (1932).

NBW's position is inconsistent with a basic precept of the District's scheme of taxation. Refunds of taxes cannot be made absent an authorizing statute. *District of Columbia v. Keyes*, D.C.App., 362 A.2d 729, 732 (1976), *cert. denied*, 430 U.S. 968, 97 S.Ct. 1651, 52 L.Ed.2d 360 (1977). The only authorized deduction from taxable gross earnings of incorporated savings banks is for "interest to . . . depositors." D.C.Code 1973, § 47–1703. Even assuming that "claim of right" principles permitted the bank to adjust its accounts for payments it should have remitted to a depositor previously, no payment would be deductible unless it constituted "interest to . . . depositors." As noted, we have concluded that NBW's settlement payment did not amount to such interest.

NBW's alternative portrayal of the settlement as a "restoration of earnings" rather than as "interest" effects no more than a change in semantics and does not bolster its position. Both characterizations

---

**16.** As another court has observed in construing "interest" in an unrelated context:

Congress did not use the term "interest" in the revenue acts with reference to "some esoteric concept derived from subtle and theoretic analysis," but in its "usual, ordinary, and everyday meaning." [*Commissioner v.*

*Raphael*, 133 F.2d 442, 445 (9th Cir.) (footnote omitted), *cert. denied*, 320 U.S. 735, 64 S.Ct. 34, 88 L.Ed. 435 (1943), quoting *Old Colony Railroad Co. v. Commissioner*, 284 U.S. 552, 561, 52 S.Ct. 211, 214, 76 L.Ed. 484 (1932).]

rely on the faulty premise that NBW was obliged to provide the Fund with some form of consideration in return for the Fund's deposits. Certainly the district court in *Blankenship* found no such agreement, either express or implied. The damages award, and hence the settlement, compensated the Fund for loss of income measured solely by the hypothetical return on tax-free investments, and not by the bank's gain from its tortious use of the Fund's deposits.

Lacking both statutory and factual foundation for a "claim of right" deduction, NBW fails to demonstrate any error in the District's assessment or collection of the bank's gross earnings tax. Absent such a showing, coupled with our conclusion that the bank's settlement payment was not deductible "interest," the District is not required to refund the tax paid. *See* D.C. Code 1973, §§ 47–2407, –2413.

Accordingly, the judgment of the trial court is reversed, and the case is remanded to the trial court with directions to enter judgment for the District of Columbia.

*So Ordered.*