HUTCHISON BROTHERS EXCAVAT-
ING COMPANY, INC., Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 84–1320.

District of Columbia Court of Appeals.
Argued Nov. 8, 1985.
Decided June 11, 1986.

C. Francis Murphy, with whom Louis P. Robbins, Washington, D.C., was on brief, for appellant.

Michele Giuliani, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before NEBEKER, FERREN and TERRY, Associate Judges.

NEBEKER, Associate Judge:

Appellant Hutchison Brothers appeals the trial court's order granting the District of Columbia's motion for summary judgment on the question of appellant's liability for motor vehicle fuel taxes for the period from April 1976 through March 1981. In granting summary judgment for the District, the trial court ordered the District to initiate a rulemaking proceeding pursuant to the District of Columbia Administrative Procedure Act (DCAPA), D.C. Code § 1–1501 et seq. (1973 & 1977 Supp.), to interpret and implement the Motor Vehicle Fuel Tax Act, D.C.Code § 47–1901 et seq. (1973) (currently codified at § 47–2301 et seq. (1981)). The trial court further ordered that rules resulting from the rulemaking would be retroactive and predetermined concerning appellant's tax liability. Appellant contends that the trial court's order compelling a retroactive rulemaking is invalid because such a process is contrary to the requirements of DCAPA.[1] Thus, appellant seeks to avoid tax liability by challenging the retroactive and predetermined effect of the rulemaking order. We affirm the trial court's ultimate conclusion as to appellant's tax liability but reverse that portion of the trial court's order directing the District to initiate rulemaking and, thereby, moot appellant's claim as to the retroactive and predetermined effect of the ordered rulemaking.

I

The material facts in this case are not in dispute. Appellant Hutchison Brothers is a District of Columbia corporation engaged in the excavation business. Quite naturally, appellant's business activities require the use of heavy excavating equipment, which is primarily engaged in off-road, or nonhighway operation. Appellant purchases fuel for its excavating equipment in Maryland and imports that fuel into the District of Columbia for use in its equipment here. Thus, appellant is not assessed D.C. fuel taxes at the pump as are motor vehicle fuel purchasers in the District.

Although importers of motor vehicle fuel are taxed on the fuel they import into the District,[2] taxes had never been collected

1. Specifically, appellant contends that the trial court's order undercuts the requirements of public notice and opportunity to comment embodied in § 1–1506(a), which provides in pertinent part:

> The Mayor and each independent agency shall, prior to the adoption of any rule or the amendment or repeal thereof, publish in the District of Columbia Register ... notice of the intended action so as to afford interested persons opportunity to submit data and views either orally or in writing, as may be specified in such notice. The publication or service required by this subsection of any notice shall be made not less than 30 days prior to the effective date of the proposed adoption, amendment, or repeal, as the case may be, except as otherwise provided by the Mayor or the agency upon good cause found and published with the notice.

Appellant also relies upon § 1–1538, which provides that no rule that has been adopted can become effective until after its publication in the District of Columbia Register. Appellant contends that the trial court's order is contrary to § 1–1538 because the order would permit any future rule that the Department of Finance and Revenue promulgates and publishes to impose tax liability on appellant prior to the rule's effective date.

2. The term importer was originally used in the Motor Vehicle Fuel Tax Act, ch. 131, § 2(c), 43 Stat. 106, 107 (1924) (currently codified at D.C. Code § 47–2302(3) (1981)). The term importer is defined in D.C.Code § 47–2302(3) (1981) as follows:

> The term "importer" means any person who brings into, or who produces, refines, manufactures, or compounds, in the District of Columbia motor vehicle fuel to be used by him

from appellant for the fuel it imported. This was so for two reasons. First, a provision of the Motor Vehicle Fuel Tax Act, D.C.Code § 47–1910 (1967),[3] granted a fuel tax refund to purchasers within the District of Columbia of motor vehicle fuel used for nonhighway purposes. Although appellant did not strictly qualify under this refund provision because it did not purchase fuel in the District of Columbia, the refund was liberally applied to include importers of fuel used for off-road, or nonhighway purposes. Second, the Department of Finance and Revenue decided that administrative expenses and burdens obviated the necessity of collecting the tax from importers who would ultimately be entitled to a refund under the nonhighway purposes provision. In 1971, Congress amended the Motor Vehicle Fuel Tax Act by repealing § 47–1910.[4] In 1982, the District assessed appellant for motor vehicle fuel tax deficiencies for the period from April 1, 1976 through March 31, 1981. It is from this assessment that appellant appealed to the Tax Division of the Superior Court.[5] Following the Tax Division's order

or to be sold, kept for sale, bartered, delivered for value, or exchanged for goods.

Importers of motor vehicle fuel are required to pay a tax on the fuel they sell or otherwise dispose of or use in any calendar month. Motor Vehicle Fuel Tax Act, ch. 131, § 6, 43 Stat. 106, 107 (1924) (previously codified at D.C.Code § 47–1906 (1967) and currently codified at D.C. Code § 47–2306(a) (1981)). Section 47–2306(a), which is virtually identical to § 6 of the Motor Vehicle Act as originally enacted, provides as follows:

The tax in respect to motor vehicle fuel so sold or otherwise disposed of or used in any calendar month shall be paid by the importer on or before the 25th day of the next succeeding calendar month to the Collector of Taxes of the District of Columbia, who shall issue a receipt to the importer therefor.

3. Section 47–1910 was originally enacted as the Motor Vehicle Fuel Tax Act, ch. 131, § 10, 43 Stat. 106, 107 (1912) (later codified at D.C.Code § 840 (1929) and § 47–1910 (1967), and repealed in 1971 pursuant to the Revenue Act of 1971, Pub.L. No. 92–196, 85 Stat. 653). Section 47–1910 provided:

Any person who purchases any motor-vehicle fuel in the District of Columbia to be used for operating or propelling any stationary gas engine, tractor used for agricultural purposes, motor-boat, aeroplane, or aircraft of any character, or for cleaning or dyeing, or for any other purpose other than use in a motor vehicle operated, or intended to be operated, in whole or in part upon any of the public highways of the District of Columbia, on which motor-vehicle fuel the tax imposed by sections 47–1901 to 47–1916 shall have been paid, shall be refunded the amount of such tax so paid by the importer, upon presenting to the collector of taxes of the District of Columbia a sworn statement accompanied by the invoices showing such purchase, which statement shall set forth the total amount of such motor-vehicle fuel so purchased and used by such consumer other than in motor vehicles oper-

ated, or intended to be operated, on any of the public highways of the District of Columbia. Such refunds shall be made by check by the collector of taxes for moneys paid for taxes on motor-vehicle fuels and retained on deposit as hereinafter in this section provided. For the purpose of such refunds the collector of taxes is authorized at all times to retain in a special fund on deposit in a Government depositary moneys paid him for such taxes, the total amount so retained on deposit not to exceed $1,000 at any one time. Applications for refunds as provided herein, must be filed with the collector of taxes of the District of Columbia within sixty days from the date of purchase: *Provided,* That before any refund shall be made the applicant shall furnish to the collector of taxes of the District of Columbia satisfactory evidence by sworn statement of the exempted use of such fuel purchased by him.

4. The refund provision was repealed pursuant to the Revenue Act of 1971, Pub.L. No. 92–196, 85 Stat. 653. In repealing the refund provision, the legislature stated:

This title ... repeals the existing motor vehicle fuel tax exemption for fuel sold for "non-highway use." The exemption allows a purchaser of motor vehicle fuel for non-highway use ... to present to the District a sworn statement setting forth the total amount of such fuel so purchased in order that the purchaser may receive a refund for the amount of gas tax paid on the fuel.

S.Rep. No. 489, 92d Cong., 1st Sess. 15–16 (1971).

5. The District argues in its brief that the Tax Division should have dismissed appellant's appeal for want of jurisdiction because appellant failed to appeal the final determination of tax within six months from the date of assessment of deficiency as required by D.C.Code §§ 47–2319, –3303 (1981 & 1984 Supp.). This argument is not well founded. The District initially notified appellant of the tax deficiency on April

for a retroactive and predetermined rule-making proceeding, appellant appealed to this court.

## II

### A.

■ In reviewing appeals from the Tax Division, we apply the same standard of review applicable in other decisions of the court in civil cases tried without a jury. *District of Columbia v. National Bank of Washington,* 431 A.2d 1, 3 (D.C.1981); D.C.Code § 47–3304(a) (1981). Thus, we will abide by the trial court's factual findings unless they are "clearly erroneous," *Rock Creek-Woodner Ltd. v. District of Columbia,* 466 A.2d 857, 859 (D.C.1983); *District of Columbia v. National Bank of Washington, supra,* 431 A.2d at 3; *District of Columbia v. Neyman,* 135 U.S. App.D.C. 193, 196, 417 F.2d 1140, 1143 (1969), or unless a finding is "plainly wrong or without evidence to support it." *District of Columbia v. National Bank of Washington, supra,* 431 A.2d at 3; *Ashby v. United States,* 363 A.2d 685, 687 (D.C. 1976); D.C.Code § 17–305(a) (1981). A trial court's legal conclusions are always subject to our review, D.C.Code § 17–305(a) (1981), and we will reverse a trial court's decision that is based on errors of law. *Burns v. Hanover Insurance Co.,* 454 A.2d 325, 328 (D.C.1982).

### B.

■ The trial court held that because Congress' elimination of the refund provision that § 47–1910 provided was neither explicitly stated in nor apparent from the text of the amended statute, the District is required to promulgate rules interpreting and implementing the amended statute. This holding is erroneous. Rulemaking proceedings serve the primary purpose of acquainting rulemakers with basic legislative facts to inform them fully in promulgating rules. *See Hotel Association of Washington v. District of Columbia Minimum Wage and Industrial Safety Board,* 318 A.2d 294, 305–07 (D.C.1974) (en banc); *Chevy Chase Citizens Association v. District of Columbia Council,* 327 A.2d 310, 314 (D.C.1974) (en banc). In *Junghans v. Department of Human Services,* 289 A.2d 17 (D.C.1972), this court considered the requirement of a rulemaking proceeding to determine the appropriate formula for the payment of welfare assistance to qualified recipients. We stated that the agency must proceed with rulemaking to be fully informed "of the public's viewpoint before making difficult and fundamental policy decisions concerning the allocation of scarce resources." *Id.* at 22. In *District of Columbia v. Green,* 310 A.2d 848 (D.C.1973), we held that a rulemaking was necessary before the Department of Finance and Revenue could increase the debasement factor for real property taxes on single family residences.

In both *Junghans* and *Green,* we decided that rulemaking proceedings were necessary before the agencies could alter existing policies when the underlying statutes granted those agencies discretionary authority in implementing the statutes. *See District of Columbia v. Green, supra,* 310 A.2d at 853 & n. 13 (D.C.Code § 47–713 grants agency authority to assess all real property at same level); *Junghans v. Department of Human Services, supra,* 289

14, 1981. After a hearing during which appellant challenged the deficiency, the District notified appellant on April 5, 1982 that the assessment was warranted and that a penalty would be added, thereby increasing the assessment. Appellant sought a waiver of the penalty, which was granted on September 1, 1982. Appellant paid the tax and subsequently filed its petition in the Tax Division on February 28, 1983.

Persons aggrieved by a final determination of tax must appeal to the Tax Division within six months from the date of assessment. D.C.Code §§ 47–2319, –3303 (1981 & 1984 Supp.). The final determination of appellant's assessment was made on the date that appellant's assessment of deficiency became final—when the District notified appellant that the waiver of penalty was granted—on September 1, 1982. Thus, appellant's petition in the Tax Division on February 28, 1983 was within the six-month statutory period.

A.2d at 19 (D.C.Code § 3–204(a) grants Commissioner authority to determine amount of public assistance). The statute in this case, however, contains terms that allow for no discretion and are sufficiently precise to be applied without implementing rules. *See District of Columbia v. North Washington Neighbors, Inc.*, 367 A.2d 143, 147 (D.C.1976), *cert. denied*, 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977) (agency not required to initiate rulemaking when resulting rules merely describe controlling provisions); *see also Metzenbaum v. Federal Energy Regulatory Commission*, 219 U.S.App.D.C. 57, 66, 675 F.2d 1282, 1291 (1982) (rulemaking not necessary when statutory standard is precise; agency given no discretion to deviate from precise course established by statute). Thus, rulemaking in this case would be " 'contrary to public interest' ... [and] ... a futile gesture." *Metzenbaum v. Federal Energy Regulatory Commission, supra*, 219 U.S.App. D.C. at 66, 675 F.2d at 1291 (quoting 5 U.S.C. § 553(b)(B)). Moreover, the trial court's reasoning that repeal of the refund provision compels a rulemaking to interpret and implement the amended statute is unsound. Here, Congress simply eliminated the refund previously granted to purchasers of motor vehicle fuel within the District of Columbia whose vehicles were engaged in off-road, or nonhighway operation. Apart from two other amendments not implicated here,[6] Congress did not alter the precise statutory directive that importers of motor vehicle fuel into the District are to be taxed on the fuel they import. It strains logic to conclude that a statute, plain on its face and not susceptible to misinterpretation, which has been on the books and applied for over fifty years, now requires a rulemaking to aid in its interpretation.

## C.

Appellant predicates its argument to avoid tax liability on the trial court's order for retroactive rulemaking, which would interpret and implement the amended statute following repeal of the refund provision. As an importer of motor vehicle fuel, appellant never expressly qualified for the now-repealed exemption. Importers of motor vehicle fuel were permitted to benefit from the refund provision, however, because the administrative burdens and expenses associated with collecting the tax prompted the District to liberally apply the exemption to those importing fuel for off-road, or nonhighway purposes. Thus, appellant received a windfall through the Department of Finance and Revenue's nonenforcement of the statute. Appellant now argues, in effect, that because the Department of Finance and Revenue neglected previously to collect the motor vehicle fuel tax, the agency is prevented from collecting it now. Agency inaction warrants little deference; "the failure of ... [the agency] ... to act is not binding administrative interpretation...." *Baltimore & Ohio Railway Co. v. Jackson*, 353 U.S. 325, 330–31, 77 S.Ct. 842, 845–46, 1 L.Ed.2d 862 (1957). Moreover, a tax collector's error or decision not to collect a particular tax gives no "right to its perpetuation." *Sirbo Holdings, Inc. v. Commissioner of Internal Revenue*, 509 F.2d 1220, 1222 (2d Cir.1975). Thus, although the Department of Finance and Revenue previously decided, for administrative reasons, not to collect the tax from importers, the agency is free to alter its practice, particularly when the administrative reasons for noncollection evaporate and the governing statute is clear on its face.

## D.

Because we conclude that rulemaking is unnecessary to interpret this statute, we

---

**6.** In the Revenue Act of 1971, Pub.L. No. 92–196, 85 Stat. 653, Congress enacted three amendments to the Motor Vehicle Tax Act. In addition to repealing the off-road, or nonhighway use exemption, *see supra* note 4, Congress raised the motor vehicle fuel tax from 7 cents to 8 cents per gallon. *See* D.C.Code § 47–1901 (1967 & 1972 Supp. V). Congress also expanded the definition of motor vehicle fuel. *See id.* § 47–1902(b) (currently codified at § 47–2302(2) (1981)).

reverse that portion of the court's order directing the District to initiate such proceedings. The practical effect of our decision is to moot appellant's contention concerning the retroactive and predetermined effect of the ordered rulemaking. We otherwise affirm the trial court's determination as to appellant's tax liability as an importer of motor vehicle fuel.

*Affirmed in part and reversed in part.*